249 P.2d 498

**SELBY v. TOLBERT et al.**

**No. 5464.**

Supreme Court of New Mexico.

Oct. 22, 1952.

W. C. Whatley, W. B. Darden, LaFel E. Oman, Las Cruces, for appellants.

T. K. Campbell, Las Cruces, for appellee.

PER CURIAM.

Upon consideration of motion for rehearing, the former opinion is withdrawn and the following substituted therefor:

COORS, Justice.

The plaintiff, an eight year old boy, by next friend, his father, sues for damages for injuries arising out of the negligence of the defendants, Tolbert-Barron-Lowenhaupt, in causing a burned out semi-trailer to be placed on a vacant lot in such manner as to constitute an attractive nuisance and cause injury to the plaintiff as the result of his playing near and on it. The defendant appeals from judgment awarding $1,230.65 to the plaintiff.

The defendants, Tolbert-Barron-Lowenhaupt, are a firm of independent insurance adjusters doing business in El Paso, Texas. On May 30, 1948, a van-type, refrigerated trailer belonging to one Art Kashmer of Brownsville, Texas, was damaged by fire on the highway eight miles west of Las Cruces, New Mexico, and left there. The defendants were contacted by a firm of adjusters in Chicago and asked to take care of the matter. Subsequently the defendants asked Marion Pritchett, a garage operator in Las Cruces, to obtain removal of the trailer to a safe place. Pritchett was without proper equipment to remove the trailer and so informed the defendants, stating he could get Guy Reed, an experienced heavy equipment mover, to do the job. Reed placed the trailer on a dolly and moved it to an empty lot in Las Cruces. The lot adjoined a lot leased by Laws and Son for their petroleum distributorship. Laws and Son later purchased the lot and gravelled it, but at the time the trailer was placed on it the lot belonged to another party and was seldom used for any purpose because of its terrain. The trial court found that Laws and Son were not guilty of negligence in any manner, and no appeal is taken from that portion of the judgment.

The trailer was parked on the lot, near the street, and left on a dolly, braced by beams. On July 7, 1948, the plaintiff, in company with other children, was in front of a church across the street from the trailer while his parents attended church. The father of the plaintiff had admonished him not to cross the street and go near the trailer. The plaintiff and the other children did, in fact, cross the street and begin to play near the trailer. The plaintiff was attracted by the trailer and particularly attracted to the rear end of it where there were melted remnants of the red tail lights. The plaintiff touched a tail light and the trailer tipped over on him, pinning him beneath it and fracturing his leg. In this action he sought to recover medical and

hospital expenses and damages. The case was tried to the court without a jury.

The defendants challenge the ruling of the trial court that they must respond in damages as principals for the negligent acts of their agent in placing the trailer on the lot, asserting that Guy Reed in effecting the removal of the trailer from the highway to the vacant lot was acting not as their agent, but as an independent contractor.

If this was meant to be a defense to plaintiff's action as tried below, the record poorly suggests the fact. The pleadings fail even to mention the phrase "independent contractor" if, indeed, it must be pleaded as a defense, a matter we do not determine. The issue is not hinted at in objections to testimony adduced at the trial or in other rulings made. Nor is the finding of agency in Guy Reed objected to in any way. No findings or conclusions touching the issue of independent contractor are requested, or made. The phrase "independent contractor" appears for the first time in defendants' brief on appeal. It is now too late to attempt to inject the issue. Any objections which might have been made by the defendant must be deemed to have been waived. Rule 52 (b) (6), Rules of Civil Procedure; Chavez v. Chavez, 1950, 54 N.M. 73, 213 P.2d 438; Teaver v. Miller, 1949, 53 N.M. 345, 208 P.2d 156; Rubalcava v. Garst, 1949, 53 N.M. 295, 206 P.2d

1154; Hardy v. Clark, 1940, 44 N.M. 590, 106 P.2d 854; Wells v. Gulf Refining Co., 1938, 42 N.M. 378, 79 P.2d 921.

The trial court found (1) that the agents of the defendants parked the trailer in a dangerous, careless and negligent manner and that by reason of the trailer's burned condition, structure and appearance it was attractive to children of tender years in general, and calculated to and did arouse their childish curiosity and desire to play thereon and, therefore, constituted an attractive nuisance, (2) that the plaintiff was attracted thereto and by reason of his tender years did not appreciate the danger, and being unable to resist his natural inclination to play thereon was injured while so doing, (3) that the defendants, by their agent, created a dangerous condition by parking the trailer in the manner stated, and that the agent should have known by the exercise of ordinary prudence that the trailer was parked in a dangerous manner, and (4) that the proximate cause of the plaintiff's injuries was the negligent, careless and dangerous manner in which the defendants parked the trailer and permitted it to remain.

The parent case of the attractive nuisance doctrine is the English case of Lynch v. Nurdin, 1 Q.B. 29, 113 Eng.Rep. 1041 (1841), where the owner of a horse and cart was held liable for injury to a six year old boy who wrongfully boarded the

cart and was injured when a playmate led the horse away. There the defendant maintained recovery was barred by the wrongful act of the plaintiff, but the court answered by analogy to instances where an owner of property may be liable for injuries to trespassers, such as the spring-gun case of Bird v. Holbrook, 4 Bing. 628, 130 Eng.Rep. 911 (1828). The court held the defendant was negligent and stated that the plaintiff merely indulged his natural childish instincts, having been tempted by the negligence of the defendant's servant.

In the United States the doctrine has been applied to railroad turntables, ponds, automobiles, lumber piles and machinery. For a collection of cases see annotations in 36 A.L.R. 34 and 9 N.C.C.A. (N.S.) 489.

The courts have not applied consistent tests for the application of the doctrine, nor are the theories of liability free from confusion. Various theories of liability advanced include intent to injure, wantonness, maintenance of a trap or concealed danger, or implied invitation. The Restatement of Torts, Sec. 339, p. 920, in an attempt to clarify the rules, states:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

The attractive nuisance doctrine is now said to be accepted in "about two-thirds of the states, with the major industrial states generally in the minority." 16 Brooklyn Law Review 218, at p. 220 (1950).

In jurisdictions which deny recovery, it is usually under the Massachusetts or "Draconian" theory that regards children as trespassers and denies recovery in the absence of wanton negligence on the part of the defendant. It is this theory which defendants urge in contending the plaintiff went on the lot as a trespasser, that there was nothing to show that the trailer as parked was extraordinarily attractive to

children, and that even though it were attractive to children, the danger of playing about it was obvious.

The Draconian theory is criticized severely in 1 Thompson on the Law of Negligence, Sec. 1026, p. 939 (2d Ed.):

" * * * This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts *property* above *humanity,* leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his inability to be a trespasser in sound legal theory, and visits upon him the consequences of his trespass just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any measure of duty towards him which they would not owe under the same circumstances towards an adult."

The only instance in which the attractive nuisance doctrine has been considered by this court was in the case of Barker v. City of Santa Fe, 1943, 47 N.M. 85, 136 P.2d 480. The complaint in that case alleged the city operated sewage disposal plants consisting of tanks containing sewage on which floated a deposit with the appearance of ordinary soil, and that the fence was down in several places and gates had been open to the area for some three years, although repeated protests were made to the city about such conditions. We held the complaint sufficiently alleged the existence of a dangerous and attractive nuisance and permitted recovery for the wrongful death of a ten year old child who went on the premises to recover her father's hat which had blown thereon, stepped into the tank and drowned.

1 Thompson (op. cit. supra) Sec. 1030, pp. 944, 945, states with regard to cases where the landowner or occupier was held liable:

" * * * These decisions proceed on one or the other of two grounds: 1. That where the owner or occupier of grounds *brings* or *artificially creates* something thereon which from its nature is especially *attractive to children,* and which at the same time is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. 2. That although the dangerous thing may not be what is termed an *attractive nuisance,*—that is to say, may not have an especial attraction for children by reason of their childish instincts,—yet where it is so *left exposed* that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reason-

ably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them."

As seen in Barker v. City of Santa Fe, supra, recovery was permitted although the child was not attracted upon the land by the pond itself, but went on the premises to retrieve a hat which had blown in the pond. As a result of the dangerous condition of the pond, death was incurred by drowning. Recovery was permitted, seemingly, on a theory that would fall under the second basis of liability as stated by Thompson, supra.

In the instant case it may fairly be said the child *was* attracted on the lot by the dangerous object itself, was indeed attracted by the melted red glass of the tail light on the trailer to touch it, and as a result the trailer tipped over on him and caused the injury. Even though cautioned not to go near the trailer by his parent, the natural attraction of the object and its condition outweighed the direction of the parent in the mind of the child. This is a justifiable case for the application of the attractive nuisance doctrine.

The sole case cited in support of the defendants' argument is Esquibel v. City and County of Denver, 1944, 112 Colo. 546, 151 P.2d 757. In that case the court refused to permit recovery against the city under the following circumstances: An eleven year old child was injured as a result of climbing upon and playing about old automobile bodies and parts deposited on lots belonging to the defendant, although placed there without the express permission of the defendant. Before the car bodies and parts were placed on the lots the children of the neighborhood had been accustomed to play on the vacant lots, and the child who sustained the injuries testified she knew it was dangerous to play there after the lots became used as a junk yard. The court ruled the objects occasioning the injury to the child were not unusually dangerous and the danger in them should have been apparent to children playing thereon. It further limited the liability of the landowner to only those instances where the child is attracted on the land by the dangerous condition, object or instrument itself.

While we are aware the rationale of the Colorado decision has substantial support in other jurisdictions, it has never been adopted in New Mexico and to so hold at this date would, in effect, overrule portions of the Barker case, which we are not inclined to do. It follows that the judgment of the trial court is affirmed, and

It Is So Ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.