374 P.2d 129

Bernard **KLAUS**, individually; Bernard **Klaus**, Administrator of the Estate of John Mike Klaus, deceased; and Dorothie Marie Klaus, a minor, by Bernard Klaus, her next friend, Plaintiffs-Appellants,

v.

**C. R. EDEN, C. R. Eden Construction Co., and Charles P. Harrington, Defendants-Appellees.**

**No. 6964.**

Supreme Court of New Mexico.

Aug. 14, 1962.

Shipley, Seller & Whorton, Alamogordo, for appellants.

W. C. Whatley, L. E. Oman, Las Cruces, for appellees.

MOISE, Justice.

At about 9:00 a. m. on August 6, 1959, a week day, the defendant C. R. Eden, who was President of the defendant C. R. Eden Construction Co., landed his Bonanza airplane at a small unattended or "week-end" airport in Alamogordo, New Mexico, after a flight from Albuquerque. Defendant construction company was engaged in building houses in Alamogordo, and defendant C. R. Eden had landed at this airport some 100 times over the last several years.

The plane had a single door and standard equipment. When the door is closed the handle is flush with the door on the outside. To get hold of it, a small knob on one end of the handle must be pushed, whereupon the handle pushes up, and it can be gotten hold of. Then it must be jerked to open the door. The handle on the inside is designed very much like a car door handle, except there is a button in the head of the handle which must be pressed to release a catch and make the handle operable. If the button is not pushed the handle will not engage the latch. As was defendant Eden's custom when parking during the day, he did not lock the door with a key. When parking at night he

would lock the plane to protect it from vandals. An affidavit in the file indicates that pilots when parking at "week-end" airports customarily locked the doors of their planes to protect them from trespass, theft and vandalism. To permit moving the plane under such circumstances the brake is not set, and the wheels are chocked, or the plane tied down.

The airport was operated by defendant, Charles P. Harrington. It had no attendants and offered no services except on weekends. It was available for landing, parking and taking off every day of the week. It was located at the northerly city limits of Alamogordo. A highway bounded it on the west and there was another road running along the south. Adjoining the airport on the east are located the Otero County Fair Grounds which were utilized as a recreation area for the general public. It consisted of fair ground building, a roping arena, livestock stalls, and a section where there were public rides, games and food and drink concessions which were open daily. There was no fence separating the fair grounds and the airport, and the country was open, level and unobstructed. It was approximately one-quarter mile from the fair ground buildings to the place where defendant Eden parked his plane.

On the day in question John Mike Klaus, aged 8, and his sister, Dorothie Marie Klaus, aged 7, were playing in their fenced back yard located somewhere between a half mile and a mile from the airport, when about 8:15 or 8:30 a. m., their step-mother became aware that they had left the yard. It appears they had gone to look for a neighbor's dog, had wandered to the amusement area of the fair grounds and from there to the airport where they got into defendant Eden's plane, closed the door and then couldn't open it to get out. Eden, upon his return to the plane about 4:30 p. m. found John Mike dead and Dorothie Marie so affected from being in the extremely hot, closed plane as to require hospitalization and medical treatment. This was the first time that the children had ever wandered away from home to the fair grounds or airport, and there is no proof that any other children had ever been seen around the airport.

The trial court sustained a motion for summary judgment in behalf of defendant, Eden, and defendant, C. R. Eden Construction Company, from which ruling this appeal is prosecuted. Plaintiff's position is that defendants are liable under the attractive nuisance doctrine.

Appellants argue that the doctrine of attractive nuisance has been recognized in New Mexico since 1943 and our decision in Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480, and they place particular reliance on Selby v. Tolbert, 56 N.M. 718, 249 P.2d 498. This was a case in which an 8-year old child was injured

while playing around a burned out semitrailer which had been placed upon a dolly, braced by beams, and left by defendants on a vacant lot situated directly across the street from a church. Several children crossed the street from the church and were playing near the trailer when plaintiff, attracted by the melted remnants of the red tail light, touched it and the trailer tipped over onto him, breaking his leg. Judgment in his favor was affirmed.

In the course of its opinion, this court reviewed the origin and development of the attractive nuisance doctrine, and noticed that several states do not recognize it. The court further indicated its acceptance and approval of the Restatement of Torts, § 339, which it described as an "attempt to clarify the rules."

In the case of Cotter v. Novak, 57 N.M. 639, 261 P.2d 827, we noted the decision in Selby v. Tolbert, supra, and pointed out that whereas there is nothing inherently dangerous about a trailer, the decision there turned on the fact that the manner of parking created a dangerous condition which might be attractive to playing children and which defendants should have foreseen as reasonable men.

In Mellas v. Lowdermilk, 58 N.M. 363, 271 P.2d 399, we again had occasion to quote from page 925 of the Restatement of Torts, § 339, and to refer to Selby v. Tolbert, supra. We called attention to the rule that cases are to be construed on a basis of the facts involved therein, and that the manner of parking the trailer resulted in hidden dangers not apparent to the child who was injured.

Additionally, appellants argue that the facts in the instant case are analogous to those in Railroad Company v. Stout, 17 Wall. 657, 84 U.S. 657 (1873), which was the first of the "turntable cases" in which a recovery was allowed to a child who trespassed on railroad property and was injured while playing with a turntable. Points of similarity are called to our attention. The distance of appellant's home from the amusement park is approximately the same as the distance of the plaintiff's home from the depot in Stout. The turntable was some ¼ mile from the station house and it was not enclosed or visibly separated from the adjoining property; in the instant case the plane was parked approximately ¼ mile from the amusement park whch was not visibly separated from the airport. In both cases, travelled roads passed in close proximity. In Stout, plaintiff went with other boys to the depot and then proceeded to the turntable, while here the children went to the amusement park, and from there to the airport. It is thus seen that the facts are closely parallel.

There is one clear difference in the cases. In Stout, children had been seen playing around the turntable on previous occasions. Here it does not appear that any children

had been seen by the defendant around the airport. Indeed, there is no proof that any children ever were around the airport.

Appellee argues that this case does not fit within the provisions of Restatement of Torts, § 339, which for convenience we here quote:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

■ First, it is pointed out that appellees were not the possessors of the land upon which the children trespassed. Al-

though this is true, the situation is no different from that present in Selby v. Tolbert, supra. Also, it is quite clear from reading the cases that although the Restatement, § 339, does not recognize it, the doctrine is not limited to cases of landowner liability, but applies equally to dangerous items of personal property whether on public or on private property. See "Trespassing Children" by Dean William L. Prosser, 47 Cal.L.R. 427, 436. As a matter of fact, we see nothing different in the so-called law of attractive nuisance and the general law of negligence, except that involved is a recognition of the habits and characteristics of very young children. Under certain circumstances a higher degree of care is required to be exercised in order that they may not be injured or killed by property or instrumentalities which they should not approach or become involved with, but because of their natural curiosity and lack of judgment they may undertake to investigate to their injury.

■ Eliminating the requirement that the rule is only to be applied to "a possessor of land," are appellees subject to liability under the rule of the Restatement of Torts, § 339, supra, for the death and injury caused through the instrumentality of the airplane parked unlocked at the airport?

Appellees say "no" because the place was not one where appellees knew or should

have known that children were likely to trespass. They point out the total absence of evidence that children had ever been seen at the airport and while they admit the possibility that as an isolated instance, a child or children might come into the airport, they deny that this was "likely," or that under the circumstances of this case the possibility should have been foreseen by appellees. As we read § 339(a), for appellees to be held liable they must have appreciated as reasonable men that it was "likely" that children would venture to the airport.

Defendant Eden had made some 100 landings at the airport and there was no evidence he ever saw a child there. There was even a total absence of proof that any children had been in fact around the airport at any time. Furthermore, it is clear that the two children here involved never before had undertaken a venturesome trek to the airport. These being the facts, how can it be contended that appellees either had knowledge of the danger, or should have anticipated the tragedy which was to ensue?

Assuming that the airport was a place of danger, there can be no liability if the defendants had no reason to anticipate that children might find their way to it. Without such reason, no duty is imposed and so there can be no liability. In Hardy v. Missouri Pac. R. Co., C.C., 266 F. 860, where a boy undertook to walk through a 700-foot long conduit built by defendant and was killed, it appearing that other boys had walked through the conduit three times in the preceding four years but not that defendant had knowledge of it, the court said:

"Nothing approaching knowledge by defendant of any passage through the conduit of boys at any time was shown, and such knowledge cannot be inferred nor imputed from the three trips in the course of four years shown in the evidence. Such knowledge cannot be founded upon the circumstances that children played about the openings of the conduit. There is no limit, except physical ability, to what a child may do. The law does not require the property owner to guard against any such wide possibility of action. 'Anticipation,' in the meaning of this doctrine, means probability, not possibility. There must be a reasonable expectation of the presence of children at the time and place of danger before there arises a duty to guard them from that danger. In our judgment, the proof here falls short of this standard."

See, also, Empire District Electric Co. v. Harris, 8 Cir., 82 F.2d 48; Sinclair Prairie Oil Co. v. Smith, 186 Okl. 631, 99 P.2d 903; Prosser, "Trespassing Children," supra, at 448.

■ It is immaterial if the other requirements of § 339 are present. Under

the rule as stated, there must be concurrence of all four conditions.

It follows from the foregoing that the trial court was correct in granting summary judgment, and its action should be affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

CHAVEZ and NOBLE, JJ., not participating.