409 P.2d 493

Mark MARTINEZ, a Minor by Julian Martinez, his father and next friend,
Plaintiff-Appellant,

v.

LOUIS LYSTER, GENERAL CONTRACTOR, INC., a corporation, Defendant and
Cross-Defendant Appellee,

ATCHISON, TOPEKA & SANTA FE RAILWAY CO., a corporation, Defendant and
Cross-Claimant, Third Party Plaintiff, Appellee,

v.

The CITY OF LAS VEGAS, New Mexico, a Municipal Corporation, Third Party
Defendant, Appellee.

No. 7706.

Supreme Court of New Mexico.

Nov. 29, 1965.

Rehearing Denied Jan. 13, 1966.

Bigbee & Byrd, John A. Mitchell, Santa Fe, for appellant.

**640**

Seth, Montgomery, Federici & Andrews, Fred C. Hannahs, Santa Fe, for appellee Louis Lyster, General Contractor.

Iden & Johnson, R. G. Cooper, J. J. Monroe, Albuquerque, for appellee, Atchison Topeka & Santa Fe Railway Co.

Roberto L. Armijo, Las Vegas, for appellee The City of Las Vegas, New Mexico.

COMPTON, Justice.

This is an action to recover damages for injuries sustained by a 7-year-old boy in falling from a stack of culvert pipes. Summary judgments were granted for the defendants, and the plaintiff appeals.

Mark Martinez, by his father and next friend, instituted the suit against Louis Lyster, General Contractor, Inc., hereinafter referred to as Lyster, alleged to be the owner of the pipes, and against Atchison, Topeka & Santa Fe Railway Company, hereinafter referred to as Santa Fe, on whose property the pipes were stacked. Thereafter, Santa Fe joined the City of Las Vegas as a third party defendant and cross-claimed against Lyster. Based on the pleadings of the parties, and depositions of Lyster and employees of Santa Fe, the injured boy, his parents and brother, the court concluded, as a matter of law, that Lyster and Santa Fe were entitled to summary judgments.

The three steel, asphalt-covered, culvert pipes in question were 42 inches in diameter and 16 feet long. They were stacked in pyramid fashion with two pipes on the ground adjacent to each other and the third one on top. Thus stacked, the pipes were located on Santa Fe property near its tracks at the intersection of two streets, and at the rear of the backyard of the appellant's home in Las Vegas. They had been in that position, near a pathway used by pedestrians to cross the tracks, for nearly a year preceding the injury involved. The pipes were originally so placed by a supplier at the instance of a contractor for the City of Las Vegas under a pipeline license from Santa Fe to the city, and were thereafter acquired by Lyster from a previous contractor for use in performing a subsequent contract with the city to lay a sewer line beneath the Santa Fe tracks. While Santa Fe gave no specific permission for the pipes to be stacked on its property, yet, with knowledge of their presence, it did not object thereto. The president of Lyster knew that children played on and around the pipes, and employees of Santa Fe knew that children played on its property near the tracks. The record is not clear as to when title or control passed to Lyster.

On July 5, 1963, the appellant, his brother and two friends, were playing the game of "tag" in and upon the pipes. In order to swing himself from one of the lower pipes across to the other lower one the appellant held onto the top rim of the top pipe. In the course of this maneuver his hands

slipped and he fell backwards onto the ground suffering the injuries alleged. The fall resulted from playing on the stack of pipes and not from any defective condition in or any movement of the pipes themselves.

The action was based upon the doctrine of attractive nuisance. The fundamental issue is whether the court erred in concluding, as a matter of law, that the culvert pipes did not constitute an attractive nuisance and that the defendants were not negligent.

The appellant takes the position that this is a proper case for the application of the doctrine of attractive nuisance and that there were genuine issues of material fact which were erroneously disposed of summarily by the trial court.

The appellees, on the other hand, argue that because the facts were undisputed it was for the court to determine, as a matter of law, whether there arose any duty on the part of the appellees to the appellant. Consequently, they assert the court was correct in concluding that the stacked pipes did not constitute an attractive nuisance and that the appellees were not liable for injury to the appellant who fell from such nondefective and stationary objects reached by climbing. In support of their position, the appellees rely strongly on McFall v. Shelley, 70 N.M. 390, 374 P.2d 141, wherein a block wall was held not to be an attractive nuisance in the absence of hidden danger of which the possessor of the property had knowledge.

We do not understand the McFall case, or other cases cited from this jurisdiction, to support the appellees' position that all nondefective and stationary objects or structures upon which a trespassing child climbs and from which he falls are excepted from the application of the so-called doctrine of attractive nuisance.

In Klaus v. Eden, 70 N.M. 371, 374 P.2d 129, this court stated that there is nothing different in the so-called law of attractive nuisance and the general law of negligence, except that involved is a recognition of the habits and characteristics of very young children. This was reiterated in the recent case of Saul v. Roman Catholic Church of Arch. of Santa Fe, 75 N.M. 160, 402 P.2d 48, wherein we also stated that:

"In order to subject a possessor of land to liability for bodily harm to young children trespassing, there must be a concurrence of the following conditions, (1) the place or property must be one upon which the owner knows or should know children are likely to trespass, (2) the condition of the property must be one which the owner knows or should know involves an unreasonable risk of death or harm to such children, (3) the children because of their youth do not discover the condition or realize the risk, and (4) the utility to the possessor or owner of maintaining the condition is slight as compared to the risk of young children in-

volved. Restatement of Torts, § 339; Klaus v. Eden, 70 N.M. 371, 374 P.2d 129; Selby v. Tolbert, 56 N.M. 718, 249 P.2d 498."

and, further, with reference to attractive nuisance cases therein cited and discussed, including McFall v. Shelley, supra, we said:

"We do not perceive that these cases stand for the proposition that certain conditions or instrumentalities do, or do not, constitute an attractive nuisance. In each of them, the test of foreseeability of harm to a child under the particular circumstances was the crucial consideration."

█ It is clear from the above that this court has never sanctioned attempts to place cases involving the doctrine of attractive nuisance in a rigid category on the basis of the type of condition involved. Whether the maintenance of a specific condition can give rise to liability for harm to trespassing children must necessarily turn on the facts of the particular case.

█ The situation here is factually similar to Saul v. Roman Catholic Church, supra. Questions of fact were present whether Lyster knew that childen played on and around the pipes, whether Santa Fe employees knew that children trespassed on its property to play, whether Lyster owned or controlled the pipes and whether the appellees exercised that degree of care for the protection of appellant which the circumstances required. These are not matters of law for the court to dispose of by summary judgments.

The judgments are reversed and the cause is remanded with instructions to proceed in a manner not inconsistent herewith.

It is so ordered.

CHAVEZ, and MOISE, JJ., concur.

CARMODY, C. J., and NOBLE, J., dissenting.

CARMODY, Chief Justice, and NOBLE, Justice (dissenting).

Although neither Justice Noble nor I participated in the panel which heard the oral argument in this case, we feel duty-bound to make our position known with respect to a problem vital to every person in New Mexico.

A careful examination of the majority opinion makes it apparent that the summary judgment rule is no longer being applied to cases involving trespassing children. It is almost impossible to conceive of any situation under today's ruling, where a child is injured because of an artificial condition, under which some factual determination would not have to be made. Although admitting that it is not for the best to adopt rigid categories which may or may not fall within the so-called attractive nuisance doctrine, nevertheless, to us, it is obvious that, in the instant case, neither the appellee railroad nor the appellee contractor knew,

or had any reason to know, that these three stationary culvert pipes involved an *unreasonable risk of death or serious bodily harm* to the appellant. Such knowledge, or "reason to know," is one of the absolute requisites which must be determined before the so-called attractive nuisance doctrine can apply. Even the boy's father specifically stated that there was nothing inherently dangerous about the pipe itself. There is no evidence that the pipes moved in any way, there was no hidden defect in any sense—this boy's hands slipped when he was holding onto part of the upper pipe and he fell the "tremendous distance" of three and a half feet at the most. The majority say that questions of fact are present—we strongly protest—foreseeability of "unreasonable risk," under the circumstances, is a matter of law and was properly so determined by the trial court. The injury was not the proximate result of the condition, could not have been foreseen, and was little different, except for the unfortunate result, from what occurs hundreds of times daily throughout the world when a child climbs some object.

Assuming that New Mexico has adopted § 339, Restatement, Torts, it is of interest to note some of the comments under the revised § 339, Restatement (Second), Torts:

"i. * *. * It does not extend to those conditions the existence of which is obvious even to children and the risk of which should be fully realized by them. This limitation of the possessor's liability to conditions dangerous to children, because of their inability to appreciate their suroundings or to realize the risk involved, frees the possessor of land from the liability to which he would otherwise be subjected by maintaining on the land the normal, necessary and usual implements which are essential to its normal use, but which reckless children can use to their harm in a spirit of bravado or to gratify some other childish desire and with as full a perception of the risks which they are running as though they were adults.

"j. There are many dangers, such a [sic] those of fire and water, or of falling from a height, which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it." and m:

" * * * This does not require him to keep his land free from conditions which even young children are likely

to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less chooses to encounter it out of recklessness or bravado."

Each of the above quotations is particularily applicable to the instant case and would more than justify the affirmance of the action of the trial court in granting summary judgment.

We respectfully submit that, carrying the rule today announced (and also contained in Saul v. Roman Catholic Church of Arch. of Santa Fe, 1965, 75 N.M. 160, 402 P.2d 48, and Martinez v. C. R. Davis Contracting Company, 1964, 73 N.M. 474, 389 P.2d 597) to its logical conclusion, the court has charged the duty of protecting children upon every member of the community except their own parents. It would seem that there is literally no artificial condition which, depending upon its use, could not somehow be considered highly dangerous to a trespassing child. This is particularly true when a court, perhaps because of sympathy for an injured child, determines through "hindsight" that something has proven to be dangerous which no reasonable man would have thought involved any unreasonable risk before the occurrence of the accident. Children climb almost every conceivable thing or structure which is above the ground and frequently fall therefrom; yet, under the majority opinion, the property owner, in effect, becomes a guarantor of every child's safety because he lacked "a crystal ball" which would enable him to look into the future and anticipate an unfortunate result because of the recklessness or bravado of some child. We agree that the so-called attractive nuisance doctrine, properly applied, has a place in our law—children must be protected, insofar as we are able to do so. However, when the child's fall was in no way attributable to any hidden defect or the manner in which the pipes were stacked, we feel that to impose possible liability upon the landowner or the person in control is putting an unfair, unjust burden on the rights of property owners.

There is another matter with respect to the majority opinion which we believe deserves more consideration than is given to it in the opinion of the court. The trial court granted two separate summary judgments,

one in favor of the railroad and one in favor of the contractor. Even though we fail to see that any error occurred as to either of these judgments, nevertheless we would note that the allegation of the complaint alleged that the ownership of the pipes was in the contractor, whereas the evidence is uncontradicted that, at the time of the unfortunate accident, Lyster did not own the same. Nowhere in the briefs of the appellant is there evidence pointed out which showed that Lyster controlled the pipes at the time of the accident, but the majority practically ignores this omission with the statement, "The record is not clear as to when title or control passed to Lyster." Even if we assume that the matter of control is all-important and ownership of little consequence, still the duty is on the appellant to point out where such evidence is in the record, and most certainly the court should not search for it. Nevertheless, the basis of the above-quoted statement is nowhere pointed out in the briefs, and we, as the minority in this case, do not feel there is a duty which falls upon us to search the record to determine whether or not the control had passed to Lyster at the time of the accident.

In appellee Lyster's answer brief, it is stated, with supporting transcript references, that title was not transferred until five days after the accident and that Lyster did not exercise any control until three days thereafter. This statement is in no sense controverted in the reply brief, and we believe that, under our rules, it must be accepted as true. Thus there can be no basis for the reversal of the granting of summary judgment as to the appellee Lyster. The appellant has failed to show that there was any question of fact raised as to a duty arising between the plaintiff and the contractor Lyster. Therefore, the summary judgment was properly granted.

For the above reasons, we dissent.