1998-NMSC-007

957 P.2d 44

**Yolanda CARMONA, as personal representative of the Estate of Alejandra Carmona, deceased, Plaintiff–Appellant,**

v.

**HAGERMAN IRRIGATION COMPANY, Defendant–Appellee.**

No. 24243.

Supreme Court of New Mexico.

March 5, 1998.

**60**

Thomas F. Hooker, Jr. & Associates, Thomas F. Hooker, Albuquerque, for Appellant.

O'Brien & Skinner, P.C., Daniel J. O'Brien, Victoria L. Williams, Albuquerque, for Appellee.

## OPINION

SERNA, Justice.

{1} Plaintiff–Appellant Yolanda Carmona (Carmona) appeals the trial court's grant of summary judgment in favor of Defendant– Appellee Hagerman Irrigation Company (Hagerman) in her wrongful death claim arising out of the drowning of her child, Alejandra Carmona. Carmona seeks damages and injunctive relief for negligence under the attractive nuisance doctrine. Carmona contends that the district court erred by granting summary judgment on the basis of Arizona's *Salladay* doctrine rather than relying on New Mexico law. *See Salladay v. Old Dominion Copper Mining & Smelting Co.,* 12 Ariz. 124, 100 P. 441 (1909). In a cross-appeal, Hagerman asks this Court to reverse the trial court's letter decision denying Hagerman's motion for summary judgment under the Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 1996), should this Court reverse on the *Salladay* issue.

{2} We conclude that the trial court erred by applying the *Salladay* doctrine and granting Hagerman's motion for summary judgment. We also conclude that Hagerman is not a governmental entity and, therefore, is not entitled to summary judgment for immunity under the Tort Claims Act. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

{3} On May 29, 1993, two-and-one-half-year-old Alejandra Carmona drowned in an irrigation canal owned and maintained by Hagerman Irrigation Company. Carmona, decedent's mother, seeks damages for wrongful death and abatement of the nuisance under the doctrine of attractive nuisance.

{4} Hagerman is a privately owned, non-profit corporation engaged in the business of furnishing water for irrigation and domestic purposes to its members near the town of Hagerman, New Mexico. In the Order on Summary Judgment, the trial court found that this community is in an arid region of the state and that the irrigation system owned by Hagerman provides water necessary to the surrounding farming community.

{5} The trial court issued a letter decision denying Hagerman's motion for summary judgment on the question of immunity under the Tort Claims Act, finding that there were disputed issues of fact. In a subse-

quent motion for summary judgment, Hagerman argued that, as an irrigation ditch operator, it is immune from application of the attractive nuisance doctrine. The trial court, in granting the motion, relied on Arizona's *Salladay* doctrine, which has not been recognized by a New Mexico appellate court. *See Salladay*, 100 P. at 442 (concluding that "as a matter of law and as a matter of public policy" the attractive nuisance doctrine should not be extended to flumes and irrigation ditches).

{6} We accepted certification on this case from the Court of Appeals on the question of whether Hagerman is entitled to summary judgment based upon the *Salladay* doctrine or, alternatively, immunity from liability under the Tort Claims Act. The question of whether New Mexico should adopt the *Salladay* doctrine is "an issue of substantial public interest." *See* NMSA 1978, § 34–5–14(C)(2) (1972). In the certification order, the Court of Appeals stated that New Mexico has adopted the formulation of the attractive nuisance theory expressed in the Restatement (Second) of Torts § 339 (1965) and determined that this "judicially created cause of action" requires "clarification in the context of its application to possessors and operators of irrigation ditches."

## STANDARD OF REVIEW

{7} "Summary judgment is an extreme remedy which should yield to a trial on the merits if, after resolving all reasonable doubts in favor of the opponent of the motion, the evidence adduced at the hearing establishes the existence of a genuine issue as to any material fact." *Peoples State Bank v. Ohio Cas. Ins. Co.*, 96 N.M. 751, 752, 635 P.2d 306, 307 (1981). "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to

judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992).

## ATTRACTIVE NUISANCE AND THE *SALLADAY* DOCTRINE

■ {8} The attractive nuisance doctrine evolved as an exception to the general rule that a landowner is not liable to trespassers.[1] In *Railroad Company v. Stout*, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745 (1873), the United States Supreme Court employed the attractive nuisance, or "turntable," doctrine,[2] and allowed recovery by a trespassing child injured while playing with a turntable on railroad property. The Court recognized "that the conduct of an infant of tender years is not to be judged by the same rule which governs that of an adult," and that the "care and caution required of a child is according to his [or her] maturity and capacity only, and [that] this is to be determined in each case by the circumstances of that case." *Stout*, 84 U.S. (17 Wall.) at 660.

{9} The Arizona Supreme Court, in *Salladay*, refused to extend the attractive nuisance doctrine enunciated in *Stout* because the condition was part of a class of "patent and visible alluring dangers." *See Salladay*, 100 P. at 442. The Court held that an unenclosed flume maintained by the defendant on his land did not fall under the attractive nuisance doctrine as a matter of law, effectively granting immunity for the death of the plaintiff's child, who was carried down the flume while playing near it as a trespasser. *See Salladay*, 100 P. at 441–42. The Court concluded that flumes and irrigation ditches are "equally dangerous and alluring" to children but "practically impossible to render harmless" and "indispensable for the maintenance of life and prosperity." *Salladay*, 100 P. at 442. "[W]ith regard to trespassing

---

1. *See Railroad Co. v. Stout*, 84 U.S. (17 Wall.) 657, 661, 21 L.Ed. 745 (1873) ("[W]hile a railway company is not bound to the same degree of care in regard to mere strangers who are unlawfully upon its premises that it owes to passengers conveyed by it, it is not exempt from responsibility to such strangers for injuries arising from its negligence or from its tortious acts."); *see generally Ford v. Board of County Comm'rs*, 118 N.M. 134, 139, 879 P.2d 766, 771 n. 4 (1994); UJI 13–1305 NMRA 1998 (duty of care owed to a trespasser).

2. The name turntable doctrine was derived from *Stout*. The Restatement (Second) of Torts § 339 is entitled, "Artificial Conditions Highly Dangerous to Trespassing Children." Although a "misnomer," the designation "attractive nuisance" is used by many courts, including those in New Mexico. *See* Restatement (Second) of Torts § 339 cmt. b.

children who drown in irrigation canals, as a matter of public policy, the *Salladay* doctrine is as viable today [in Arizona] as it was in 1906 [sic]." *Salt River Valley Water Users' Ass'n v. Superior Court*, 178 Ariz. 70, 870 P.2d 1166, 1171 (Ariz.Ct.App.1993).

{10} This Court also has recognized the "constitutional significance" of water and "[i]ts scarcity and overall importance in our semiarid state." *Bybee v. City of Albuquerque*, 120 N.M. 17, 20, 896 P.2d 1164, 1167 (1995). However, the trial court erred by applying the *Salladay* doctrine rather than referring to New Mexico law concerning attractive nuisance. Appellate courts in New Mexico have considered the attractive nuisance doctrine on numerous occasions. *See generally Martinez v. Louis Lyster, Gen. Contractor, Inc.*, 75 N.M. 639, 642, 409 P.2d 493, 495 (1965) (reversing trial court's conclusion that culvert pipes do not constitute an attractive nuisance as a matter of law); *Saul v. Roman Catholic Church*, 75 N.M. 160, 164, 402 P.2d 48, 51 (1965) (affirming judgment for a boy injured while jumping over an excavation because evidence substantially supported verdict under attractive nuisance doctrine); *Klaus v. Eden*, 70 N.M. 371, 376, 374 P.2d 129, 132 (1962) (affirming trial court's grant of summary judgment for defendant-owner of an airplane, in which one child died and another was injured under attractive nuisance doctrine and stating that "there can be no liability if the defendants had no reason to anticipate that children might" venture to the airport); *Mellas v. Lowdermilk*, 58 N.M. 363, 369, 271 P.2d 399, 404 (1954) (concluding trial court erred by not sustaining defendants' motions for a directed verdict in wrongful death case based on attractive nuisance); *Latimer v. City of Clovis*, 83 N.M. 610, 615, 495 P.2d 788, 793 (Ct.App.1972) (reversing summary judgment granted in favor of defendant for wrongful death under attractive nuisance doctrine).

{11} This Court has applied the doctrine of attractive nuisance to avoid the harsh results of treating children as trespassers and denying recovery in the absence of wanton negligence on the part of the defendant. *See Selby v. Tolbert*, 56 N.M. 718, 723, 249 P.2d 498, 501 (1952) (affirming defendants' liability for child's injuries resulting from being pinned under a trailer based on attractive nuisance doctrine). "[W]e see nothing different in the so-called law of attractive nuisance and the general law of negligence, except that involved is a recognition of the habits and characteristics of very young children." *Klaus*, 70 N.M. at 375, 374 P.2d at 131.

{12} In *Mellas*, this Court discussed the application of the attractive nuisance doctrine with respect to ponds, pools, lakes and irrigation ditches. *See Mellas*, 58 N.M. at 368–69, 271 P.2d at 403. *Mellas* involved a nine-year-old boy who drowned in a fenced pond which included posted "no trespassing" and "no swimming" signs. *Mellas*, 58 N.M. at 363–65, 271 P.2d at 400–01. The question for determination was whether the attractive nuisance doctrine should be extended to "cases of patent and visible alluring dangers other than those arising from mechanical appliances, defects, or otherwise." *Mellas*, 58 N.M. at 368, 271 P.2d at 403. This Court concluded that "we are clearly of [the] opinion that [the attractive nuisance doctrine] should not be extended" because bodies of water "are practically impossible to render harmless, and are indispensible [sic] for the maintenance of life and property." *Mellas*, 58 N.M. at 368–69, 271 P.2d at 403; *see also Martinez v. C.R. Davis Contracting Co.*, 73 N.M. 474, 477–78, 389 P.2d 597, 599 (1964) (Noble, J., dissenting) (noting that "in New Mexico it is established that the attractive nuisance doctrine will not be extended to include . . . natural or artificial bodies of water, ditches or canals."). However, we question the continuing validity of this position, as has the Court of Appeals, *see Latimer*, 83 N.M. at 615, 495 P.2d at 793 ("In our opinion, the language in *Mellas* . . . has been modified by subsequent decisions of the New Mexico Supreme Court.").

{13} In *Saul*, this Court stated that "[w]e do not perceive that [*Mellas*] stand[s] for the proposition that certain conditions or instrumentalities do, or do not, constitute an attractive nuisance" as "the test of foreseeability of harm to a child under the particular circumstances [is] the crucial consideration." *Saul*, 75 N.M. at 163, 402 P.2d at 50. Further, in *Martinez v. Lyster*, we stated that

this [C]ourt has never sanctioned attempts to place cases involving the doctrine of attractive nuisance in a rigid category on the basis of the type of condition involved. Whether the maintenance of a specific condition can give rise to liability for harm to trespassing children must necessarily turn on the facts of the particular case.

*Martinez v. Lyster,* 75 N.M. at 642, 409 P.2d at 495; *see also Latimer,* 83 N.M. at 615, 495 P.2d at 793 (noting that the language in *Mellas* has been modified by *Martinez v. Lyster* and *Saul*). Additionally, the concerns raised by Hagerman and addressed in *Mellas,* specifically, the difficulty of making water hazards safe, are addressed by the Restatement (Second) of Torts § 339(d), which considers whether "the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved." We will not exempt or provide immunity for particular categories of industry from the attractive nuisance doctrine, and while we are concerned with the difficulty and expense landowners may encounter with respect to trespassing children, this issue is a factor within our attractive nuisance doctrine to be weighed under the particular facts of each case.

■ {14} While this Court incorporated the principles pertaining to the attractive nuisance doctrine from the first version of the Restatement of Torts § 339 (1934) in *Selby,* 56 N.M. at 721, 249 P.2d at 500, we have yet to clearly adopt the second version of the Restatement. *See Schleft v. Board of Educ.,* 109 N.M. 271, 274, 784 P.2d 1014, 1017 (Ct.App.1989) (noting that this Court adopted the first version of Section 339 and has not addressed the applicability in New Mexico of the second version); *but cf. Martinez v. Lyster,* 75 N.M. at 643, 409 P.2d at 496 (Carmody, C.J., dissenting) (discussing the comments under the second version of Section 339). The Restatement (Second) of Torts § 339 differs from the first Restatement by the addition of a fifth clause, a reasonable care element. Although the element of reasonable care is implied in our

earlier cases, *see Martinez v. Lyster,* 75 N.M. at 642, 409 P.2d at 495 (noting that whether defendants exercised degree of care for protection of plaintiff which the circumstances required was not a matter of law, but a question of fact), we conclude that it is beneficial to adopt the second version of the Restatement in order to clarify our position.[3]

{15} The Restatement (Second) of Torts § 339 states:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he [or she] realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

"Even though the possessor knows that children are likely to trespass, that the condition on the land involves an unreasonable risk of harm to them, and that they are likely not to discover or appreciate the risk, there is liability only if the possessor fails to take the steps which a reasonable [person] would take under such circumstances." Restatement (Second) of Torts § 339 cmt. o.

■ {16} The Restatement specifically addresses the application of these principles

**3.** *Cf. M & M Rental Tools, Inc. v. Milchem, Inc.,* 94 N.M. 449, 453, 612 P.2d 241, 245 (Ct.App. 1980) (adopting Restatement (Second) of Torts, involving interference with contractual relations, because of inappropriateness of using outmoded language in earlier version of the Restatement).

to the dangers posed by water. Under comment j of the Restatement (Second) of Torts § 339,

> [t]here are many dangers, such [as] those of fire and water, ... which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in this Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible, or a distracting influence which makes it likely that the child will not discover or appreciate it.[4]

We understand this comment not as creating immunity or an exception to attractive nuisance cases involving water but, instead, as recognizing that, under some circumstances, particular cases may fail to meet the criteria stated in Section 339(c) ("[C]hildren because of their youth do not discover the condition or realize the risk involved in intermeddling with it ....").

■ {17}  Thus, in the context of seemingly open and obvious dangers, a plaintiff must demonstrate a factual basis supporting liability sufficient to overcome comment j and satisfy Section 339(c) of the Restatement in order to make a prima facie case. In the present case, the trial court must determine whether there is a factual basis for Hagerman's liability under the attractive nuisance doctrine prior to granting summary judgment. The decedent was a child under age three. In this context, there may be a potential basis for liability notwithstanding comment j: "Where ... the possessor knows that children too young to appreciate such dangers are likely to trespass on his [or her] land, he [or she] may still be subject to liability to such children under the rule stated ." Restatement (Second) of Torts § 339 cmt. j. The trial court must apply New Mexico's attractive nuisance doctrine as expressed by the Restatement to the facts of this case.

{18}  Hagerman argues that it is unreasonable to impose the burden of eliminating the source of injury because the cost would be prohibitive and because it is virtually impossible to make an irrigation ditch inaccessible to trespassing children. While these contentions might be persuasive, these arguments raise genuine issues of material fact. In granting summary judgment, the trial court did not rely on the costs and benefits of making this particular irrigation ditch safer for children. See Restatement (Second) of Torts § 339(d) ("the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved"). Rather, the court found the general policy arguments of Salladay to be compelling. Again, although we agree that these policies raise important concerns, this Court will not determine, as a matter of law, that all irrigation ditches are categorically exempted from the doctrine of attractive nuisance. However, we do not preclude the trial court from granting a motion for summary judgment if there are no genuine issues of material fact under New Mexico's attractive nuisance doctrine as articulated by the Restatement (Second) and the movant is entitled to judgment as a matter of law.

{19}  The trial court erred by applying Salladay because existing New Mexico law on attractive nuisance does not allow the creation of immunity or exceptions based solely on the type of condition or instrumentality involved. Contrary to Arizona in Salladay, New Mexico will not exempt particular defendants from the attractive nuisance doctrine as a matter of law. Rather, the outcome must "necessarily turn on the facts of the particular case." Martinez v. Lyster, 75 N.M. at 642, 409 P.2d at 495. Therefore, summary judgment was improperly granted, and we reverse and remand to the trial court for proceedings consistent with this opinion.

## IMMUNITY UNDER THE TORT CLAIMS ACT

■ {20}  Hagerman filed a cross-appeal on the issue of whether it is a public entity

---

4.  The Court in *Mellas* employed similar reasoning in reaching the conclusion that a nine-year-old boy *"had the capacity to comprehend and* *avoid* the danger" of drowning in a pond. *Mellas,* 58 N.M. at 366, 271 P.2d at 401–02.

for purposes of the Tort Claims Act, which would then potentially provide immunity. The trial court did not enter a final order on this issue, instead, the trial judge made the finding in a letter decision. Appellate courts generally lack jurisdiction to entertain appeals from non-final orders; thus, it is unclear whether this cross-appeal is properly before the Court. *See Britt v. Phoenix Indemn. Ins. Co.*, 120 N.M. 813, 815, 907 P.2d 994, 996 (1995); *see also B.L. Goldberg & Assoc. v. Uptown, Inc.*, 103 N.M. 277, 278, 705 P.2d 683, 684 (1985) (rule in New Mexico is that "an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible").

■ {21} However, this Court also recognizes the policies of disfavoring piecemeal appeals and promoting meaningful appellate review. *See Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 239–40, 824 P.2d 1033, 1041–42 (1992). To this point, Hagerman argues that "[s]hould this court reverse in whole or in part the order of summary judgment from which [Carmona] has appealed, this purpose [disfavoring piecemeal appeals] would be contravened in that upon remand to the trial court, the parties would simply have the order entered, with the subsequent appeal back to the appellate court." We disagree. Because Hagerman's motion for summary judgment on the issue involving the Tort Claims Act was denied, the parties would have proceeded to trial, absent certification for interlocutory appeal.[5] *Compare* NMSA 1978, § 39–3–2 (1966), *with* NMSA 1978, § 39–3–4 (1971). Nevertheless, pursuant to Rule 12–201(C) NMRA 1998, we conclude that the issue is properly before us. *See* Rule 12–201(C) ("An appellee may, without taking a cross-appeal or filing a docketing statement, raise issues on appeal for the purpose of enabling the appellate court to affirm, or raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from.").

■ {22} Hagerman asserts that it was incorporated as a body corporate and politic in 1907 and that it became a non-profit corporation under an amendment to its Articles of Incorporation in 1959. Hagerman asks the Court to hold, by analogy, that it is a local public body entitled to immunity from liability under the Tort Claims Act, for damages arising out of the operation or maintenance of works used for diversion or storage of water. *See* NMSA 1978, § 41–4–6 (1977). Under the Act, a "'governmental entity' means the state or any local public body," NMSA 1978, § 41–4–3(B) (1995), and "local public body" includes "all political subdivisions of the state and their agencies, instrumentalities and institutions." Section 41–4–3(C).

{23} Although Hagerman is privately owned, it argues that it is a local public body. Hagerman relies on the Court of Appeals' recognition of an irrigation district as a local public body. In *Tompkins v. Carlsbad Irrigation District*, 96 N.M. 368, 630 P.2d 767 (Ct.App.1981), a plaintiff pursued a wrongful death claim in which an infant drowned in the standing water of a culvert operated and maintained by the Carlsbad Irrigation District (CID). The Court of Appeals first noted that CID was organized pursuant to statute which defined irrigation districts as bodies politic, *see* NMSA 1978, §§ 73–10–1 to –47 (1919, as amended through 1981); NMSA 1978, §§ 73–11–1 to –55 (1919, as amended through 1995); NMSA 1978, §§ 73–13–43 to –46 (1934). *Tompkins*, 96 N.M. at 370, 630 P.2d at 769 ("'[T]he aforesaid irrigation districts are hereby created, established and organized and continued bodies corporate and politic ....'") (quoting NMSA 1978, § 73–13–44 (1934)). Second, *Tompkins* determined that "irrigation districts are organized for the purpose of exercising a public function." *Tompkins*, 96 N.M. at 370, 630 P.2d at 769. Additionally, the Court of Appeals defined a political subdivision as "'formed or maintained for the more effectual or convenient exercise of

---

**5.** The Tort Claims Act provides immunity from liability, not absolute immunity from suit, so the collateral order exception to the finality of judgments rule would not apply in this case. *See*

*Allen v. Board of Educ.*, 106 N.M. 673, 675, 748 P.2d 516, 518 (Ct.App.1987), *cited with approval in Carrillo v. Rostro*, 114 N.M. 607, 614–15, 845 P.2d 130, 137–38 (1992).

political power within certain boundaries or localities, to whom the electors residing therein are, to some extent, granted power to locally self-govern themselves.'" *Id.* (quoting *Gibbany v. Ford,* 29 N.M. 621, 626, 225 P. 577, 579 (1924)). As a result of this analysis, the Court of Appeals recognized a "legislative declaration that an irrigation district, such as CID, is a body corporate and politic" and, as such, is a political subdivision and, thus, a local public body under the Tort Claims Act. *Id.*

{24} Hagerman argues it should be entitled to immunity under the Tort Claims Act by analogy, as it performs the same function as the CID. However, CID was properly created under Chapter 73 while Hagerman has failed to reorganize under this Chapter. NMSA 1978, § 73–9–1 (1919) states, in part, that

> where ditches ... were constructed before March 18, 1909, such ditches ... shall be exempt from the operation of this act, unless ... a statement, signed by at least four-fifths in number of the owners of any such ditch ... be filed with the board of county commissioners of each county in which such ditch ... [is] situate, giving their consent that such ditch[es] may be included in one or more irrigation districts organized or to be organized under the provisions of this act, which statement shall be recorded in the office of the county clerk of said county.

Hagerman admits that it did not reorganize itself under the statutes governing irrigation districts but argues that it acts in a similar fashion to an organized district. That may be so, but because Hagerman has the option of complying with statutory requirements in order to gain any benefits and obligations and has chosen not to do so, Hagerman cannot now claim the advantages of the Tort Claims Act by analogy. Hagerman, absent governmental affiliation or statutory authority, is not a governmental entity as required by Section 41–4–3(B) of the Tort Claims Act. Hagerman argues that "[i]n equity, [Hagerman] should not [be] denied this statutory immunity merely because it came into existence before New Mexico became a state and before laws were enacted governing irriga-

tion entities." Again, this argument fails because the statutes provide an opportunity for Hagerman to become a body politic and, therefore, bring itself within the Tort Claims Act. Thus, the Tort Claims Act does not provide an alternative ground for affirmance. Because Hagerman is not entitled to immunity under the Tort Claims Act, we need not reach Carmona's claim that such immunity is waived under other provisions of the Tort Claims Act.

## CONCLUSION

{25} We reject the trial court's use of the *Salladay* doctrine rather than New Mexico's attractive nuisance doctrine and reverse the court's grant of summary judgment. We conclude that Hagerman did not avail itself of the statutes governing irrigation districts, and therefore we will not alternatively affirm summary judgment for Hagerman under the Tort Claims Act. For the above stated reasons, this case is remanded for proceedings consistent with this opinion.

{26} **IT IS SO ORDERED.**

FRANCHINI, C.J., and BACA, MINZNER and McKINNON, JJ., concur.

