245 P.2d 384

## CITY OF CARLSBAD v. NEAL et al.
### No. 5418.

Supreme Court of New Mexico.
June 12, 1952.

S. Morton Rutherford, III, Reese, Mc-Cormick & Lusk, Carlsbad, for appellant.

C. M. Neal, Hobbs, Caswell F. Neal, Caswell S. Neal, Carlsbad, for appellees.

SWOPE, District Judge.

In this case plaintiff (appellant) brought an ejectment action against the defendants (appellees) to recover possession of what it claimed was a portion of one of its streets. In their answer and counterclaim, the defendants denied that the plaintiff was entitled to possession of the land, asserted that they owned it, and requested that their title to it be quieted. The case was tried

to a jury, and after the plaintiff had presented its evidence, the trial court sustained the defendants' motion for a directed verdict and entered a judgment dismissing the complaint and quieting the defendants' title to the land in question. The question for decision is whether this action of the trial court was error.

Viewing the plaintiff's evidence in the most favorable aspect, and indulging all reasonable inferences to be drawn from plaintiff's evidence and disregarding all unfavorable testimony and inferences, we find the following to be the facts.

On August 10, 1891, John A. Eddy filed a map in the office of the county clerk of Eddy County which was entitled, "Map of Rio Vista Suburban Property In the West Half of Section 31 Township 21 South Range 27 East, Eddy County, New Mexico." Ninety-one acres of land were shown on the map to have been subdivided into suburban lots. A number of streets, including Spring Street, were shown on the map. The plaintiff is attempting to recover possession of a portion of Spring Street in this case. It was shown to be a 60-foot street running from Blodgett Street on the South to the Pecos River on the north, a distance of 2408 feet. Pierce Street was the only street shown that intersected Spring Street between Blodgett Street and the river and the distance from Pierce Street along Spring Street to the river was about 1200 feet. At the time the Rio Vis-

ta Map was filed the land involved was located outside the corporate limits of the Town of Carlsbad, but, in 1909, the Board of Trustees of the town instituted proceedings to annex this and other outlying areas and thereafter, in the same year, these areas became a part of the town. In connection with the annexation proceedings, a map of the annexed area was filed in the office of the county clerk which showed the Rio Vista Subdivision and Spring Street. In 1918, the Town of Carlsbad became the City of Carlsbad at which time a map of the area within the city limits was filed which again showed the Rio Vista Subdivision and Spring Street.

In 1925, the lots lying west of Spring Street and running from Pierce Street on the south to the river on the north were conveyed by their owner to M. A. Scarborough. At that time, none of the streets shown on the map to be located in this area had been opened for use by the public. As a matter of fact, this entire area was a farm which was bounded on the east by a fence running down the middle of Spring Street. The land on the other or east side of the fence was also under cultivation. A portion of this land, located east of the fence and near the river, was subdivided into ten lots in 1929. This was known as the Harrison Subdivision. Spring Street was shown on the plat of this subdivision to be a 60-foot street running north and south along the west side of the Harrison Subdi-

vision to the river. It was located in the same place on both the Rio Vista Map and the Harrison Plat. However, the Harrison Plat showed that Spring Street was intersected about 213 feet south of the river by Riverside Drive, which ran through the Harrison Subdivision from east to west, while Riverside Drive was not shown on the Rio Vista Map. In 1938, an amended plat of the Harrison Subdivision was filed which again showed Spring Street but did not change its location.

After Scarborough acquired the property in the Rio Vista Subdivision, he conveyed portions of it to other persons always describing the land by the lot and block numbers shown on the map. In 1940, the then owners of the area lying west of Spring Street and north of Pierce Street replatted it and on April 26, 1940, they filed in the office of the County Clerk an "Amended Plat of Block 'A' & 'B,' Rio Vista Addition and Scarborough Addition to the Town of Eddy now the City of Carlsbad, Eddy County, New Mexico." A great many changes were made on the amended plat in the size and shape of the lots and a number of streets were added and the location of other streets was changed. Spring Street remained the same, but Riverside Drive was created so that an examination of both plats showed that Riverside Drive ran through both the Scarborough and Harrison Subdivision and intersected Spring Street at its present location.

On September 9, 1941, Lot 6 in Block 202, as shown on the Scarborough Plat, was conveyed to the defendants. Lot 6 was a corner lot bounded on the south by Riverside Drive, on the east by Spring Street, on the north by the Pecos River, and on the west by Lot 4. The plat showed that Lot 6 extended 89 feet from north to south along Spring Street to the river, and that Spring Street was 60 feet wide. In 1940, the plaintiff opened Spring Street from Pierce Street to Riverside Drive but did not open that portion of Spring Street which was shown on the plat to extend from Riverside Drive to the river. About February 27, 1942, the defendants commenced construction of their home on Lot 6 and, on April 28 and May 11, 1942, the defendants and the owner of the lot in the Harrison Subdivision which was located across Spring Street directly east of the defendants' lot applied to the City Council of the plaintiff asking them to vacate the unopened portion of Spring Street from Riverside Drive to the river. Defendant Neal took the position before the Council that since the plaintiff had never opened and accepted this portion of Spring Street but had actually rejected it by failing to open it when it opened the remainder of Spring Street, that the ownership of the land abutting his lot to the center of Spring Street had reverted to him and that, under the circumstances, the plaintiff should formally vacate the street so that his title would be

cleared of any claims the plaintiff might have to the street. The Council refused to vacate the street giving as its reason that sometime in the future the plaintiff might want to build a bridge across the river at that point. Mr. Neal then threatened to build a fence down the middle of the street and was warned by the City Clerk not to do so. In spite of this warning, he carried out his threat and, later in 1942, built a rock fence down the center of Spring Street to the river bank. As the years passed, the defendants planted trees, flowers and grass in the area and also placed other improvements on it, such as, a barbecue pit, boat dock and diving board, but they have never assessed or paid taxes on the area. No one objected or did anything about the matter until September 19, 1948, when the plaintiff suddenly sent out a crew of men to open the street to the river. When Mr. Neal objected and informed the plaintiff that he would not permit the street to be opened unless ordered to do so by the courts, the plaintiff ordered the work stopped and filed this suit. The plaintiff claims that it now desires to open the street to the river in order to give the public additional access to the river for the purpose of fishing, boating and swimming therein.

■ The defendants contend that Section 75–124, N.M.S. 1951 Cumulative Supplement, applies in this case. It provides as follows:

"*Realty donated to state or municipality for specific purpose—Recovery.* —Whenever real estate has been deeded to the state of New Mexico or any municipality thereof as a gift or donation, and without payment by the state or municipality of any money consideration, said real estate to be used for a specific purpose, and said real estate has not been used for the specific purpose for which it was conveyed, for a period of five (5) years from the date of the original deed, or for a period of five (5) years next preceding the time of the filing of the action herein provided for, it shall be lawful for the donor or donors, or their successors in interest, to institute an action in state district court of the county in which said real estate is situate, against the state of New Mexico or said municipality, for the recovery of said real estate by said donors or their successors in interest, or for the cancellation of said deed or deeds whereby the state or municipality took title, and if the court shall determine that said real estate has not been used for the specific purpose for which it was donated as hereinbefore provided, it shall render judgment decreeing ownership of said real estate in the donors or their successors in interest, or for cancellation of the deeds to said state or municipality."

After carefully studying this statute, we are convinced that it was intended to correct situations where real estate has been "deeded" to the State of New Mexico or any municipality thereof, to be used for a specific purpose, such as, a park or a library, and the state or municipality fails to use it for that purpose; and that it was not intended to apply to a situation, such as the one presented in this case, where a plat or map has been filed in the office of the county clerk by the owner of real property which has been subdivided, in which he offers to dedicate the streets shown on the plat to the use of the public which offer is subject to acceptance before the dedication is complete. There is no mention in the statute of maps or plats or streets or dedications. It clearly limits itself to conveyances by deed, as the word, "deed," is used throughout the statute.

The plaintiff contends that under New Mexico Statutes the mere filing of a plat of a subdivision in the office of the county clerk operates as a complete dedication of the streets shown thereon and that acceptance of the offer of the dedication by the authorities is not necessary. Although there is a conflict in the authorities in other jurisdictions upon the question of whether an acceptance is necessary in the case of a statutory dedication, it is settled in this jurisdiction that an acceptance is necessary. See, State ex rel. Shelton v. Board of Com'rs of Bernalillo County, 49 N.M. 218, 161 P.2d 212. The plaintiff points out, however, that in the Shelton case the ruling was confined to Sections 14–201 to 14–204, N.M.S.A. 1941, which apply only to subdivisions located outside of incorporated cities and towns, and contends that although the Rio Vista Map was filed in accordance with Sections 14–201 to 14–204, the Amended Plat covering the Scarborough Subdivision, in which the property in dispute is located, was filed after the area became a part of the City of Carlsbad, and for that reason Section 14–205, N.M.S.A. 1941, applies as it relates to plats of subdivisions located within incorporated cities and towns.

Section 14–205 is as follows:

*"Areas dedicated for public use— Fee vests in municipality.*—All avenues, streets, alleys, parks and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property and the fee thereof be vested in such city or town."

Although there is a grave doubt as to whether Section 14–205 would apply in a case of this type where the original plat had been filed before the incorporation of the city and an amended plat of a portion of the same subdivision had been filed after its incorporation, it is not necessary to decide that question here for the reason

that it is our opinion that Section 14–205 does not eliminate the necessity of an acceptance of the streets by the municipality. Under the provisions of Section 14–205, the municipality is vested with title to the dedicated streets, subject to an acceptance of the streets by it. It is well settled that an owner of property cannot, by making a plat of an addition to a city, impose upon its authorities the burden of opening, improving, caring for and otherwise accepting the streets included in his subdivision of the property, and that the dedication in a plat of land for a public street does not bind the city or county until the dedication has been accepted by the proper authorities notwithstanding the fact that the dedicator is irrevocably bound by his act. See, State ex rel. Shelton v. Board of Com'rs of Bernalillo County, supra; Ramstad v. Carr, 31 N.D. 504, 154 N.W. 195, L.R.A. 1916B, 1160.

█ Having concluded that Section 75–124, supra, does not apply in this case and that an acceptance by the plaintiff of the offer to dedicate the land in question for street purposes was necessary to complete the dedication, the next matter to be considered is whether the following questions were fact questions that should have been submitted to the jury for determination.

Did the plaintiff ever accept or reject the land in question for street purposes and, if so, when?

If the plaintiff did not accept or reject the land in question for street purposes prior to September 19, 1948, when it sent out a crew to open it, was it estopped, because of its past actions, from accepting and opening the street on that date?

In this connection, evidence was presented in this case to the effect that besides being shown on the Rio Vista Map and the Scarborough Plat, Spring Street, including the portion in question, has been shown on a number of other official maps used from time to time for several years by the plaintiff for various purposes, such as, for showing areas annexed to the plaintiff, for showing all areas within its limits, and for use in connection with developing its water and sewer systems. There was also evidence that prior to 1940 some streets in the subdivision were opened by the plaintiff as the area developed and streets were needed and that Spring Street was opened in 1940 to Riverside Drive, but was not opened from Riverside Drive to the river; that in 1942, although the portion of Riverside Drive to the river had not been opened for street purposes, the plaintiff refused to vacate it for that purpose at the request of the defendants; that in the same year the defendants, after notifying the plaintiff that they were going to do so, closed the area with a rock fence and thereafter placed valuable improvements upon it; that although the plaintiff took no le-

gal action to stop defendants from closing the street and placing valuable improvements upon it for their own use, when notified they planned to do so the plaintiff warned them against taking such steps; that the defendants have never assessed the land in question nor paid any taxes on it and the plaintiff has never levied any assessments against the defendants in connection with it; and that the plaintiff took no action to open the street until September 19, 1948, which was several years after the defendants had closed it and placed valuable improvements upon it.

It is clear that the acceptance or rejection questions and the estoppel question were fact questions that should have been determined by the jury. As pointed out in City of Los Angeles v. Kysor, 125 Cal. 463, 58 P. 90, 91, where the court said:

"* * * . The offer of the owner to dedicate may be manifested in a hundred different ways, and the acceptance of the offer by the public may be manifested in a like number of ways. * * *"

With regard to the estoppel question, it has been generally held that the doctrine of equitable estoppel may be invoked against the public depending upon the circumstances of the particular case and the requirements of justice and that, under certain circumstances, a municipality may be etsopped from asserting that it owns a street or from opening and accepting a street although it has been previously dedicated to the use of the public. See the annotation on this subject in 171 A. L.R., pages 94 to 171.

But, as stated in the case of Dabney v. City of Portland, 124 Or. 54, 263 P. 386, 388, "No hard and fixed rule can be stated for determining when this principle should be applied. Each case must be considered in the light of its own particular facts and circumstances." And, in order that an estoppel may arise, there must be inequitable conduct on the part of the city, and irreparable injury to parties honestly and in good faith acting in reliance thereon. See, City of Superior v. Northwestern Fuel Co., 164 Wis. 631, 161 N.W. 9. Whether the municipality's conduct has been such as to make it unjust and inequitable that it should assert a right to open a street is a question of fact to be determined by the jury in the light of all of the evidence. See, Chafee v. City of Aiken, 57 S.C. 507, 35 S.E. 800.

In the present case, the jury should have been permitted to determine the fact questions.

The judgment will be reversed with directions to the trial court to reinstate the case upon its docket and grant the plaintiff a new trial.

It is so ordered.

LUJAN, C. J., and SADLER, COMPTON, and COORS, JJ., concur.