A. C. GRAFF,

*Plaintiff and Respondent*

vs.

THE CITY OF CASPER, a Municipal corporation, and
MARY CATHERINE WALCZAK and M. J. WAL-
CZAK,

*Defendants and Appellants.*

(No. 2640; March 28th, 1955; 281 Pac. (2d) 685)

488

For the defendants and appellants the cause was submitted upon the brief of Marvin L. Bishop, Allen H. Stewart and Houston G. Williams, all of Casper, Wyoming, and Oral argument by Mr. Bishop and Mr. Williams.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of Donald E. Chapin and Edward E. Murane, both of Casper, Wyoming.

## OPINION

BLUME, Justice.

The plaintiff brought this action to recover from the defendants a strip of ground hereafter more fully described, alleging that he is the owner thereof and that the city of Casper in this state keeps him out of possession and asks that the title to the strip of ground be quieted in him. The defendants answered at length. No question is raised in regard to the pleadings, so it is sufficient to say that the defendant denied the ownership of plaintiff and claimed that the strip of ground was dedicated as a portion of Fifteenth Street in the city of Casper and that the plaintiff is estopped from

claiming the ownership thereof. The court entered judgment in favor of the plaintiff decreeing that he is the owner thereof subject to an easement of the city for a storm sewer hereafter mentioned. The defendants have appealed to this court, except that no appeal has been taken by any party relating to the easement. The plaintiff will hereafter be referred to as in the court below, and the city of Casper as the city.

The strip of ground in controversy is 70 feet in width, north and south, and 1120 feet in length from east to west. It is bounded on the east by South Wolcott Street in the city of Casper and on the west by South Ash Street in the same city. It is bounded on the north by some unplatted ground and by Block 3 of Krampert Addition to Casper. Lot 8 of that addition is owned by the defendants Walczak. The strip of ground in controversy is bounded on the south by a strip of ground some 53 feet in width on the west and some 30 feet in width on the east. South of the strip of ground is the Community Park Addition to the city of Casper. A diagram, approximately correct, of the strip of ground in controversy and its surroundings is as follows:

## Approximate Diagram

The facts and circumstances leading up to the action herein are as follows: J. M. Carey & Brother were the original owners of the area in question. On December 14, 1926, they conveyed the unplatted land, Block 3 of Krampert Addition and other lands east thereof, to the Casper Townsite Company, describing the south boundary thereof as Fifteenth Street "if extended". At the same time they deeded to the Casper Townsite Company, the strip of ground 53 feet wide at the west and about 30 feet wide at the east, being the strip of ground

immediately south of the strip of ground in controversy, and describing the north boundary thereof as the south boundary of Fifteenth Street "if extended". The strip of ground here in controversy was left entirely unconveyed, accordingly giving the impression to some parties that it was left to constitute part of Fifteenth Street. The Casper Townsite Company conveyed what it had received as above mentioned to Harry E. Stuckenhoff on May 27, 1946. The strip of land here in controversy was not mentioned and the latter was not conveyed to anyone by deed until about April 16, 1951, when the surviving statutory trustees of J. M. Carey & Brother, Incorporated, executed a quitclaim deed to that strip of ground to Chas. E. Chapin who conveyed it to the plaintiff by warranty deed on March 12, 1952. The area in question was never embraced in any official plat.

Before proceeding any further it is necessary, in order to arrive at a correct conclusion herein, to make a distinction between the east part and the west part of the strip of ground in controversy. The reason is this: The east part was a traveled road or street, this street leaving the strip of ground in controversy about midway between South Wolcott and South Ash Streets, swinging toward the southwest and then toward the northwest to South Ash Street, constituting sort of a circular road or street. In 1923, the city laid a storm sewer along the center of the traveled road or street, including the circular part above mentioned. The record does not disclose exact distances in this connection, but the storm sewer left the east part of the strip of ground in controversy to enter the circular part of the road, as far as we can judge, about 510 feet west of South Wolcott Street, or perhaps a little further. These elements do not appear in connection with the west part of the strip of ground in controversy, hence

the distinction to be drawn between the east part and the west part, which will at times be referred to as such.

We shall first proceed to consider the east part above mentioned. The testimony herein on the part of a number of witnesses is substantially undisputed that the traveled road above mentioned, including the east part of the strip in question, the so-called Fifteenth Street, and the circular road or street, was traveled continuously and openly by many people and the public generally from about the early part of the 1920's or before and, as far as we can tell from the record, up to the time of the trial in this case. The witnesses designated the traveled road as a country road or trail, and it remained such until at least about 1947, when apparently some improvements were made. The road or street had two definite and well worn tracks, showing or indicating that it was traveled to a considerable extent. The circular part of the road or street is shown, in part at least, on the plat of the Community Park Addition, which was platted in 1922. No good purpose would be subserved by setting out the testimony of these witnesses in detail.

On May 21, 1923, the city council of the city of Casper adopted a resolution reciting in part: "That the said City Council of the City of Casper, Wyoming, hereby declares its intention to make an improvement by laying, construction and completion of storm sewer, together with inlets and catch basins in the following streets, avenues, roadways, alleys or public ways, or parts thereof, to-wit:

" * * * West Fifteenth Street from South David Street to South Ash Street (the circular road) ; East Fifteenth Street from South Center Street to South Wolcott Street * * *."

On June 18, 1923, the city council of the city of Casper, adopted an ordinance to carry the resolution of intention into effect and specifically mentioned the portion of Fifteenth Street as in the resolution of intention. There is a gap between the two portions above mentioned, the specific description of which we have not been able to find in the ordinance but which was doubtless contained in some description. In any event the storm sewer was constructed along the center of the strip of ground which we have designated as the east part and along the circular part of the street. A manhole and some catch basins were constructed on the east part. An assessment of $8,720.94 was made against J. M. Carey & Brother for "unplatted land between 13th & 15th Streets and Durbin & Ash Streets", this showing the recognition of the existence of Fifteenth Street both on the part of the city and the Careys. A water line was constructed by the city along the area in question in 1948 and other improvements were undertaken by it to be made commencing with about the middle 1940's.

Counsel for plaintiff do not consider the action of the city council of Casper, as above mentioned, of any importance. They say, "The mere fact that a sewer line was installed across this area in 1923 does not show any prescriptive right to the surface of the area." In other words counsel do not consider the installation of the sewer as involving any claim to the surface. We think that is a fundamental error. The area in question, judging by some of the exhibits in the record, was reasonably expected to become at some time a part of an addition to the city of Casper. Cities and towns do not ordinarily construct sewers and drains in cities and additions thereto except along streets and alleys. Generally speaking, and except when necessary, it would be rather irrational to construct them across lots which

are intended for building purposes. Hence, it would seem that when a sewer is constructed along a piece of ground, the implication is that the piece of ground is, or that it is claimed as a public thoroughfare and not merely as an easement of the limited character as claimed by counsel for the plaintiff. And that would be particularly true when such piece of ground is used by the public as a traveling road.

It is stated in 26 C.J.S. § 40, pp. 107, 108: "It has been held that the enactment of an ordinance authorizing or directing the laying of a sewer or water main in a dedicated street constitutes an acceptance. * * * An acceptance of dedicated streets is clearly shown by the construction and maintenance of sewers in the streets dedicated * * *." In Hendrickson v. City of Astoria, 127 Or. 1, 270 P. 924, 927, the court stated: "Such important municipal acts as the construction of a sewer by the municipal authorities, at the expense of the city, in a dedicated street * * * strongly indicate that the city had accepted the dedication of the street 'through' which the sewer is constructed * * *." In In Trustees of Schools v. Dassow, 321 Ill. 346, 151 N.E. 896, 899, the court stated: "Acceptance of streets by a city or village may be shown by the affirmative act of taking possession thereof for purposes of placing water mains or sewers therein or by the general user by the public for a considerable period of time. Where a dedication is very beneficial or greatly convenient or necessary to the public an acceptance of such dedication may be implied from slight circumstances." In the case of Burroughs v. City of Cherokee, 134 Iowa 429, 109 N.W. 876, 880, the court said in part: "The plans also designated the location of pipes in the alleys. We think that this necessarily contemplated the use of these streets and alleys as such by the city, and that the enactment of the ordinance contemplating the im-

provements indicated was equivalent to an acceptance of these streets and alleys by the city. To accomplish this it was not necessary that the acceptance be indicated by express words. The enactment of any ordinance showing a clear intention on the part of the municipality to recognize these strips of land as streets and alleys constituted an acceptance within the meaning of the law. * * * It ought not to be thought that the council, in directing that sewers, when laid, should be placed in the spaces platted for streets and alleys, contemplated the illegal act of trespassing upon the grounds of another, but rather should the presumption prevail that in providing for sewers therein, as part of the city's system, it was the purpose of the council to recognize and treat such strips of land as belonging to the city in trust for the use of the public as streets and alleys." These authorities deal, it is true, with the effect of the construction of a sewer and the like on the acceptance of a street laid out on a plat. Nevertheless the principle involved is substantially the same as in the case at bar, for a city constructs a sewer and the like in a street, if at all, because it is, or is claimed to be a street, regardless of the particular source of title or claim of right thereto. In other words the fundamental principle involved is that a street is recognized and claimed as such by the city when it constructs structures therein such as a sewer. Our statutes, §§ 29-1101, 29-1102, W.C.S. 1945, provide for the manner in which a parcel of land may be dedicated. That was not done in this case. However, it is said in 26 C.J.S. § 3, p. 52: "It is well settled that statutes providing means whereby lands may be dedicated to public uses do not prevent such uses being created by dedication as at common law." Speaking of such common law dedication the court in Town of Springfield v. Newton, 115 Vt. 39, 50 A.2d 605, 608, 609, stated in part as follows: "A dedication of a road as a highway is the set-

ting apart of the land for public use, and may be either express or implied from the acts of the owner. It need not be evidenced by any writing or by any form of words, but may be shown by evidence of the owner's conduct, provided his intention, which is the essential element, clearly appears. Gore v. Blanchard, 96 Vt. 234, 239, 118 A. 888; Littlefield v. Hubbard, 124 Me. 299, 128 A. 285, 287, 38 A.L.R. 1306. It is not, like a grant, to be presumed from length of time alone, but may, if the act of dedication be unequivocal, take place immediately. State v. Wilkinson, 2 Vt. 480, 486, 21 Am. Dec. 560. However, a long acquiesence in user by the public, if the attending circumstances are such as clearly to indicate an intent by the owner to devote the land to public use as a highway, is evidence upon which a dedication may be predicated. Gore v. Blanchard, supra. The allowance by the owner of repairs at public expense is a circumstance strongly tending to show such intention." We might add it would seem that an assessment made for an improvement on a street would call attention to the claim of the city even more vividly than where the improvement is paid directly by the city. In 26 C.J.S. § 16, p. 70, it is stated: "Under certain circumstances an intention to dedicate land for public use may be presumed from user by the public." In 26 C.J.S. § 17, p. 72, it is stated: "The presumption of a dedication arising from long continued public user has been held to be conclusive, at least where the use was with the full knowledge of the owner, was without his permission, and was without objection being made by anyone."

Recognition, acceptance and claim on the part of the city and on its records that the east part of the strip of ground in controversy was a public street could hardly be more strongly shown than in the case at bar. A one sided claim to the street on the part of the city

would not, of course, during a limited time at least, make it so. The city might be a trespasser. It is held that the burden of proof to establish a dedication is generally on the party asserting it. 26 C.J.S. § 44, p. 114, note 64; 16 Am. Jur. § 75, p. 417. On the other hand we have seen that the Iowa Supreme Court in Burroughs v. City of Cherokee, supra, stated that we ought not to presume that the city in constructing a storm sewer is a trespasser—stated otherwise that it should be presumed that consent to the use by the city of the land in question was given by the landowner.

The burden of proof above mentioned would, in the absence of rebutting testimony, be met by the presumption, if valid. Thayer, Preliminary Treatise on Evidence, p. 380, et seq. The presumption is strengthened by the lapse of time. 1 Jones Commentaries on Evidence, 2nd Ed., § 139, p. 225. It is said, 31 C.J.S. § 146, pp. 802, 803, notes 86 and 91, there is a presumption that an official act in the line of duty was done legally, and "where some preceding act or preexisting fact is necessary to the validity of an official act the presumption in favor of the validity of the official act is presumptive proof of such preceding act or preexisting fact", at least when, as here, the official act is questioned collaterally. 31 C.J.S. p. 806, note 4; 20 Am. Jur. § 170, p. 174; § 177, p. 182; Garrett v. State, 113 Okla. 63, 238 P. 846; Majerus v. School Dist. No. 52, 139 Neb. 823, 299 N.W. 178. In the case at bar the preceding act or preexisting fact seems to consist of the acquisition, in some form, by the city of the right or privilege to enter upon the land in question for the purpose of constructing the storm sewer. The holding of the Iowa Supreme Court seems to be in accordance with the foregoing rule.

However, as indicated before, counsel for the plaintiff inferentially argue that even though consent had

been granted to construct the storm sewer, the consent did not extend to the use of the surface, but granted merely an easement for laying the storm sewer underground. There might possibly be merit in that contention if the storm sewer had been directed to be built on a certain plot of land without designating it as a street. But it was directed to be laid in a street. The resolution of intention and the ordinance directed it to be built—not on a prairie—but on Fifteenth Street. A street is a species of public highway, and the term implies, among other things that the public has a right to use it for public travel thereon. 1 Elliott, Roads and Streets, 4th Ed., §§ 19, 215, 495; 64 C.J.S. § 1682, p. 64, note 62. We cannot very well simply expunge from the public records of the city what is specifically designated as a street, and surmise that the term was used in a very limited and unnatural sense. The owners of the land must have known the full significance of the term, and if any permission was given at all, it must be held to have been coextensive with the claim of the city, especially in view of what we have already stated, that storm sewers are not ordinarily laid except in public thoroughfares.

Even if we should grant that the owners gave no previous consent that the strip of land in question here should be used as a street, the result herein should be the same. It cannot be open to question, as already indicated, that the city at least claimed it to be a street, with all the incidents thereof, and laid the storm sewer pursuant to that claim. We must presume that the proceedings of the city council were duly published as required by statute. The owners then were charged with knowledge of the construction of the storm sewer and of the recitals in the proceedings of the council as to the existence of, or the claim to, Fifteenth Street, as a street. They were assessed with more than $8,000

which must have called their attention to the facts rather sharply, particularly if the city was in fact usurping the use of ground which they considered to be their own private property. Yet for nearly thirty years —until 1951—they and their successors in interest acquiesced in the actions of the city; there were no voices of protest and no hues and cries of a trespass. Assent by silence became more and more convincing with the passage of time. And during all those long years the part of the strip of ground here considered was traveled continually by the public without objection by anyone. We cannot escape the conviction that we are constrained to hold that the part of the street here considered was dedicated as, and now is, a public street.

When we come to consider the west part of the 70-foot wide strip of ground here in controversy, we face an entirely different situation. When the property north and south of it was conveyed to the Casper Townsite Company on December 14, 1926, it was not included in the conveyance. So counsel for the city contend that it was intended to be left for a street. It might well be considered a circumstance, in addition to those already mentioned, showing such intention in connection with the east part of the strip inasmuch as that east part was publicly traveled. But it sheds no light on the intentions of the grantors in the conveyance as to the west part. The conclusion of counsel as to that part is based on no facts. We might surmise what the grantors intended, but the surmise continues to remain nothing but a surmise. For ought we know the grantors intended to retain it so as to erect structures of their own thereon, or have it used for a playground. It was not traveled as a road or street. The city did not lay a storm sewer along it. As a matter of fact it was assessed for the sewer improvement. The assessment

was imposed on the area between Thirteenth and Fifteenth Streets. The latter at that time (so far as here considered) was south of the west part of the 70-foot wide strip, consisting of the circular road or street, shown in the diagram. Exhibit 12, a map, rejected by the trial court, bears this out. It seems that about 1946, some work was done by the city on the west part of the strip for a distance of about half a block. But that was too recent to form any basis for the claim of the city. We know of no rule pursuant to which the west part here considered could be declared to have been or be a public street.

The judgment of the trial court herein must, accordingly be modified. That portion relating to what we have designated as the west part of the 70 foot wide strip of ground is controversy is affirmed, subject to reasonable access to the storm sewer, if and when necessary at the places where it is used in that part above mentioned. The judgment of the trial court is reversed as to the area of the 70-foot wide strip of ground designated as the east part of the strip of ground in controversy and as to that part, judgment should be entered in favor of the defendants and should be declared to be a public street. The trial court may make and enter such further order, not inconsistent with this opinion, including the determination of the exact dividing point between the east part and the west part herein mentioned.

*Affirmed in part.*

*Reversed in part.*

RINER, C. J. AND HARNSBERGER, J., concur.