502 P.2d 304

Angelita WILLIAMS, Individually and as Personal Representative and Administratrix of the Estate of David Martinez, Deceased, et al., Plaintiffs-Appellants,

v.

TOWN OF SILVER CITY, a Municipal Corporation, Defendant-Appellee.

No. 885.

Court of Appeals of New Mexico.

Sept. 22, 1972.

Certiorari Denied Oct. 19, 1972.

Richard E. Ransom, Smith & Ransom Law Offices, Albuquerque, for plaintiffs-appellants.

Hilton A. Dickson, Jr., Silver City, J. D. Weir, Las Cruces, for defendant-appellee.

## OPINION

WOOD, Chief Judge.

Four boys, ranging in age from seven to twelve years, suffocated when the cave in which they were playing collapsed. The cave was in the bank of an arroyo in Silver City (Town of Silver City). Part of the arroyo was within an area which had been dedicated as a street. In the resultant action for wrongful death, the jury verdict was for plaintiffs. The trial court entered judgment in favor of defendants notwithstanding the verdict. Plaintiffs appeal and Silver City cross-appeals.

We consider questions directed to the liability of Silver City, discussing three issues: (1) the location of the cave in relation to the dedicated area; (2) Silver City's claim that it did not "possess" the dedicated area; and (3) Silver City's claim of sovereign immunity. Our disposition is a remand for a new trial. Because there is to be a new trial we discuss, as issue (4), whether funeral and burial expenses were a proper item of damages in this case.

*Location of the cave.*

Corbin Street is shown as a dedicated street on a survey of Silver City filed in 1879. Between 14th and 13th Streets, the arroyo enters the dedicated area from the northeast, crosses the dedicated area in a southwesterly direction and turns in a

southerly direction to 12th Street. The cave was in the westerly bank of the arroyo near this turn. Whether this cave was within or west of the area dedicated as Corbin Street is the issue under this point. Silver City contends the evidence shows ". . . the cave-in and accident site was outside the westerly line of the dedicated way and on private property. . . ." Our answer is that the evidence of the location of the cave in relation to the dedicated area is conflicting and there is substantial evidence which would support a determination that the cave was within the dedicated area. Under the rules for reviewing evidence where there has been a judgment notwithstanding the verdict, the trial court could not have properly entered the judgment on the basis of the location of the cave. See Garcia v. Barber's Super Markets, Inc., 81 N.M. 92, 463 P.2d 516 (Ct.App.1969).

*Possession of the dedicated area.*

■ The jury was instructed that Silver City could be found liable under either of two theories—ordinary negligence or attractive nuisance. An aspect of liability under either theory is that of Silver City's duty to the decedents. Latimer v. City of Clovis, 83 N.M. 610, 495 P.2d 788 (Ct. App.1972). In instruction 14 concerning negligence, the trial court informed the jury that Silver City was the "possessor of the dedicated way" and outlined the basis for holding a possessor of land liable as that stated for licensees in Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966). In addition, the instruction on attractive nuisance implies that Silver City was the possessor of the dedicated area. We are not concerned with the status of the four boys because no issue as to their status was raised during the trial; a status question was not presented to the trial court until Silver City moved for judgment notwithstanding the verdict. Thus, the question as to the boys' status was raised too late to be the subject of review. Fredenburgh v. Allied Van Lines, Inc., 79 N. M. 593, 446 P.2d 868 (1968). Our concern is whether Silver City was the possessor of the dedicated area and, thus, with whether it had *any* duty to the boys.

■ It has been suggested that the question of Silver City's possession was never raised in the trial court. We disagree. The pre-trial order lists "[n]egligence of defendant" as one of the contested issues of fact and the legal issues as those implicit in the issues of fact. In its opening statement, Silver City informed the jury that it denied there was any negligence for which it was "liable or responsible." Silver City's motion for a directed verdict at the close of plaintiffs' case asserted the cave-in was not on any land belonging to, controlled by, or maintained or possessed by it. This claim was repeated in a motion for a directed verdict at the close of all the evidence, and expanded to refer to an alleged absence of any acceptance by Silver City of the dedicated area. In objecting to instruction 14, Silver City asserted it could not be liable as a possessor of land until the dedicated area had been accepted by it. The issue of Silver City's possession of the dedicated area is before us for review.

Silver City's liability is predicated on its alleged possession of the arroyo bank where the cave was located. Plaintiffs' theory as to Silver City's possession is ". . . that the dedicated way had been accepted by . . . [Silver City] as a matter of law, and that . . . [Silver City] was, therefore, the possessor of the land. . . ." Silver City contends there is no evidence supporting an "acceptance" of the dedicated area and, as a matter of law, there was no "acceptance" and, therefore, no possession. Thus, both parties agree that "possession" depends on "acceptance." No issue of "possession" independent of "acceptance" is presented for consideration.

■ Although Corbin Street appears as a dedicated street as early as 1879, the dedication alone was insufficient to place the dedicated area in Silver City's possession. An "acceptance" is also required. Watson v. City of Albuquerque, 76 N.M. 566, 417

P.2d 54 (1966); City of Carlsbad v. Neal, 56 N.M. 465, 245 P.2d 384 (1952); State ex rel. Shelton v. Board of Com'rs of Bernalillo County, 49 N.M. 218, 161 P.2d 212 (1945).

Here, it is an undisputed fact that Corbin Street " . . . between 12th and 14th Streets . . . has never been opened, improved, or maintained by . . . Silver City for vehicular or pedestrian traffic. . . ." Silver City relies on this undisputed fact, together with evidence of non-use by it, in asserting there was no acceptance, and, therefore, no possession, as a matter of law. The fact that the area had never been opened or maintained as a street and the evidence of non-use does not require a ruling as a matter of law that there had been no acceptance by Silver City. The question of acceptance depends in part on the extent of the public use consistent with the dedication. Phillips Mercantile Company v. City of Albuquerque, 60 N.M. 1, 287 P.2d 77 (1955). Here, there is evidence that the dedicated area was used to a certain extent by Silver City and there is no evidence that this use was inconsistent with the dedication. See Beverly Wood Associates v. City of Albuquerque, 78 N.M. 334, 431 P.2d 67 (1967); 11 McQuillin, Municipal Corporations, § 33.50 (3rd Ed. revised 1964). Thus, the trial court could not properly enter judgment notwithstanding the verdict on the basis that, as a matter of law, there had been no acceptance of the dedicated area by Silver City.

Plaintiffs' contention is that the uncontroverted facts show an acceptance of the dedicated area as a matter of law. These facts are to the effect that Silver City had exercised control over the dedicated area of Corbin Street between 12th and 14th Streets by installing a foot bridge for pedestrians, by a bridge for vehicular traffic at another point, by a drainage structure installed in the Corbin Street dedicated area south of 14th Street which drains into the arroyo, and by the fact the drainage structure was installed without condemnation proceedings. In addition, there is a map in evidence showing Corbin to be an open and existing street both north of 14th and south of 12th Streets. See McQuillin, supra, § 33.57. This evidence would support a factual determination that there had been an "acceptance." The issue, however, is whether these facts require a determination as a matter of law that Silver City had accepted the dedicated area involved in this suit. We hold they do not.

" . . . The city's liability by acceptance arises only when it has done some act which unequivocally shows an intent to assume jurisdiction over the property dedicated. . . ." The burden was on plaintiffs to prove acceptance, and the proof must be clear, satisfactory and unequivocal. Watson v. City of Albuquerque, supra; City of Carlsbad v. Neal, supra. Here, we have facts which would support a finding of acceptance, but there is also evidence indicating an absence of an intent to assume jurisdiction over the dedicated area in the vicinity of the cave-in. As examples—the long period of time that has elapsed since the dedication, and the fact that no street has been opened or maintained in the dedicated area. The evidence on which plaintiffs rely is not an unequivocal showing of an acceptance. The trial court erred in instructing the jury, as a matter of law, that Silver City was the possessor of the dedicated area here involved.

Alternative to its motion for judgment notwithstanding the verdict, Silver City moved for a new trial. Since the trial court could not properly have granted the motion for judgment notwithstanding the verdict on the basis there was no acceptance of the dedicated area by Silver City, and since it erroneously ruled, as a matter of law, that Silver City was the possessor of the area involved (it being a question of fact for the jury), the alternative motion for a new trial should have been granted.

*Sovereign immunity.*

Silver City contended at trial that it could have no liability to plaintiffs because of sovereign immunity. The trial court rejected this defense. Silver City advances this defense as a justification for the judgment notwithstanding the verdict. Barker v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480 (1943) applied the rule that a municipality could be liable in tort for corporate or proprietary functions but was immune from liability for governmental functions. Silver City asserts any function performed by it in this case, such as use of the arroyo for drainage purposes, was governmental and, thus, it was immune.

■ We disagree. Sections 5–6–18 to 5–6–22, N.M.S.A.1953 (Repl.Vol. 2), specifically authorize suits against municipalities based on negligence, with the provision that no judgment shall run against the municipality, ". . . unless there be liability insurance to cover the amount and cost of such judgment." Section 5–6–20, supra. See Chavez v. Mountainair School Board, 80 N.M. 450, 457 P.2d 382 (Ct.App.1969). Answering interrogatories, Silver City has admitted it had comprehensive general liability insurance. No claim has been made that the insurance is insufficient to cover the amount of the verdict in favor of plaintiffs. Thus, no question of immunity from suit exists in this litigation at this time. See Baca v. Board of County Commissioners, 76 N.M. 88, 412 P.2d 389 (1966).

The trial court could not properly have granted judgment notwithstanding the verdict on the basis that Silver City was immune from liability.

*Funeral and burial expenses.*

An uncontroverted fact stated in the pre-trial order is: "Funeral and burial expenses were necessary and reasonable in the following amounts, $815.10, incurred by Plaintiff Monje, and $465.66, incurred by plaintiff Williams." This uncontroverted fact was read to the jury without objection.

The trial court instructed the jury that it could consider funeral and burial expenses in arriving at the amount of any damages to be awarded. Silver City' objected, claiming that funeral and burial expenses were not recoverable as a matter of law.

Section 22–20–3, N.M.S.A.1953, states that the jury, in arriving at the damages to be awarded, may take ". . . into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment. . . ."

■ The uncontroverted fact is that the funeral and burial expenses were incurred by Monje and Williams, and the amount of those expenses shows a pecuniary injury. The evidence is undisputed that Monje was the father of three of the boys and that Williams was the mother of the other boy. They, as father and mother, are parties entitled to judgment under § 22–20–3, supra. Thus, the funeral and burial expenses were recoverable. See Hansen v. Hayes, 175 Ore. 358, 154 P.2d 202 (1944).

The trial court could not have properly granted judgment notwithstanding the verdict on the basis that funeral and burial expenses were not proper items of damage.

Other issues discussed by the parties concern: (1) attractive nuisance—see Latimer v. City of Clovis, supra; (2) ordinary care on the part of Silver City; (3) contributory negligence and assumption of risk on the part of the deceased boys; (4) contributory negligence and assumption of risk on the part of the parents; and (5) two items excluded as evidence. None of these issues would justify a judgment notwithstanding the verdict.

The judgment notwithstanding the verdict was erroneous, and is reversed. Silver City's objection to instruction 14 which declared it a possessor of the dedicated area as a matter of law should have been sustained. Because of this error the verdict in favor of plaintiffs cannot be reinstated.

The judgment is reversed and the cause is remanded for a new trial.

It is so ordered.

284

HENDLEY, J., concurs.

SUTIN, J., partially concurring and dissenting.

SUTIN, Judge (partially concurring, and dissenting).

I concur in that part of the result of the majority opinion which reverses the judgment n. o. v. I dissent because a new trial was granted defendant. The judgment for plaintiffs should be reinstated.

This tragedy occurred almost five years ago. The delay in retrying this case will have adverse effects on both parties. Experience teaches that the glow of a trial fades when the burdens of the courtroom repeat themselves.

The majority opinion grants a new trial on a trivial, legal question consisting of a phrase in an instruction admitted by defendant to be true. The opinion grants relief to plaintiffs and defendant, a noble way of doing justice.

*A. The Trial Court did not err in Instructing the Jury that, as a Matter of Law, Silver City was the Possessor of the Dedicated Area.*

The majority opinion holds, "The trial court erred in instructing the jury, as a matter of law, that Silver City was the possessor of the dedicated area here involved." I cannot agree.

This issue was not raised in the pleadings, in the evidence or in the instructions.

By instruction No. 1, the trial court set forth the claim of plaintiffs omitting any reference to possession of the dedicated area. By instruction No. 2, the trial court set forth the defenses of defendant and omitted any reference to possession of the dedicated area as a defense.

By instruction No. 3, the trial court advised the jury in part that if either plaintiff proved any one of its claims, and none of the affirmative defenses were proven, then the verdict should be for that plaintiff. There was no objection to this instruction.

Pursuant to these instructions, based upon the issues in the case, the jury compensated the plaintiffs. Possession by defendant of the dedicated way was not an issue in the case.

Instruction No. 14 was the only claimed crack in the instruction wall upon which a new trial was granted because it stated the defendant was the "possessor of the dedicated way."

Instruction No. 14 reads in part as follows:

There was in force in the Town of Silver City at the time of the occurrence in question a plat of the Town of Silver City known as the Fraser Survey. Corbin Street is shown as a dedicated street on the Fraser Survey. The Bosworth Survey Plat which is in evidence depicts the dedicated way, the water course and the point of the cave-in. *As a possessor of the dedicated way,* the Town of Silver City is subject to liability for physical harm caused to *members of the public* by a condition on the land. . . . [Emphasis added.]

This instruction is a paraphrase of Restatement, Laws of Torts 2d, § 342, adopted in Mozert v. Noeding, 76 N.M. 396, 415 P.2d 364 (1966). The instruction substituted the words "members of the public" for "such licensees," and the word "persons" for the word "licensees."

Defendant objected to this instruction on the ground ". . . . that the Defendant, *as the possessor of a dedicated way,* is not subject to liability . . . until such dedicated way has in fact been opened for public use and *accepted* by the Defendant . . . ." [Emphasis added.]

*Defendant admitted it was the possessor of the dedicated way.* This admission was given in good faith because the evidence is undisputed that defendant was the possessor. There is not an iota of evidence, facts, or inferences to be drawn therefrom, that any other person, corporation, or governmental agency possessed the dedicated way.

Defendant's objection was limited to the issue of liability based upon nonacceptance of the dedicated way, even though defendant possessed it.

(a) *Nonacceptance by Defendant was not an Issue in this Case.*

Nonacceptance by defendant was not an issue in the case. The majority opinion creates an issue of fact for the defendant. Neither the answer of defendant, the pretrial order, defendant's opening statement, nor the evidence in the case, raised the issue of defendant's acceptance or ownership. Acceptance, as a prerequisite to liability, was first mentioned by defendant casually in its motion for a directed verdict. When this motion was denied, it requested an instruction limited to dedication of the area between 13th and 14th Streets on Corbin as a dedicated "street." This request was denied. Under these circumstances, this issue was not preserved for review. Johnson v. Citizens Casualty Company of N. Y., 63 N.M. 460, 321 P.2d 640 (1958). Defendant's objection has no merit.

(b) *Even if Acceptance were an Issue, Defendant Accepted the Dedicated Way as a Matter of Law.*

For 26 years, the general rule in New Mexico has been that acceptance of an offered dedication of land may be established by proof of affirmative acts of taking possession by public authorities. Lovelace v. Hightower, 50 N.M. 50, 168 P.2d 864 (1946). The undisputed evidence establishes that defendant by affirmative acts took possession of the dedicated way. The defendant admitted it as shown supra. I am not concerned, as the majority is, whether "both parties agree that 'possession' depends on 'acceptance.'" "Possession" as stated means "acceptance."

The majority opinion does not set forth all of the undisputed evidence, but that stated is sufficient upon which to show affirmative acts of possession.

In Allen v. City of Mt. Morris, 32 Mich.App. 633, 189 N.W.2d 120 (1971), the court held that acceptance of an alley dedicated in 1909 occurred in 1962 when the city conducted a survey to locate the alley and in opening the alley for the purpose of installing a sanitary sewer. From 1909 to 1962, the alley was not opened and was blocked by trees and underbrush. Likewise, an agreement by a village with a telephone company for construction and maintenance of telephone lines along a dedicated street was a clear acceptance of the dedicated street to public use. Village of Maxwell v. Booth, 161 Neb. 300, 73 N. W.2d 177 (1955). See also Graff v. Caspar, 73 Wyo. 486, 281 P.2d 685 (1955), 52 A.L.R.2d 254, and the annotation for authorized construction of sewers, water pipes or the like as an acceptance of dedicated premises.

Public use for a considerable length of time, Galewski v. Noe, 266 Wis. 7, 62 N. W.2d 703 (1954), assumption of control; Adams v. Richmond County, 193 Ga. 42, 17 S.E.2d 184 (1941), assumption of dominion; Galveston, H & S A Ry. Co. v. City of Eagle Pass, 249 S.W. 268 (Tex.Civ. App.1923), over the dedicated premises constitutes an acceptance thereof.

The defendant's acting town manager and engineer admitted that the defendant had exercised control over the area for the benefit of public safety. This admission, and other testimony, established that the defendant exercised exclusive dominion over the dedicated way by exercising control over drainage, flood waters, erosion, pedestrian and vehicular traffic for the purpose of providing public safety.

If the defendant did not accept the dedicated way, does it still belong to the heirs of Frazer who dedicated it in 1879?

(c) *When the Instructions are Considered Together, There was no Error.*

The trial court also gave U.J.I. 17.2 which reads as follows:

The law of this case is contained in these instructions and it is your duty to follow them. You must consider these instructions as a whole, not picking out

one instruction or parts thereof and disregarding others.

This is a cautionary instruction. The jury was properly instructed on the issues of the case in instructions Nos. 1, 2 and 3. They were cautioned that in considering instruction No. 14, they should not pick out parts of this instruction without considering instructions Nos. 1, 2 and 3. See Cucinella v. Western Biscuit Company, 42 Cal. 2d 71, 265 P.2d 513 (1954); California Jury Instructions, Civil, Fifth Edition, Instruction No. 1.01.

An ordinary reading of the instructions shows that "possessor of the dedicated way" was not an issue in the case. The phrase was used in instruction No. 14 solely as a convenient method of stating the issue of liability. There is nothing in the record to show that the phrase mentioned affected the verdict of the jury in any way.

(d) *There was Sufficient Evidence to Sustain the Law of the Instruction.*

Defendant's second objection involves the issue of evidence sufficient to sustain the law of the instruction. A careful review of the record shows substantial evidence to warrant the giving of the instruction.

The defendant is not entitled to a new trial.

B. *Plaintiffs are Entitled to Recover Funeral and Burial Expenses.*

A claim for funeral and burial expenses raises a new question in New Mexico.

The New Mexico wrongful death statute, §§ 22–20–1 to 22–20–4, N.M.S.A.1953, was adopted from the State of Missouri in 1882. The adoption of these statutes included their prior construction by the courts of Missouri. White v. Montoya, 46 N.M. 241, 126 P.2d 471 (1942). Although not binding, the Missouri construction of its statutes is persuasive. Hunter-Hayes Elevator Co. v. Petroleum Club Inn Co., 77 N.M. 92, 419 P.2d 465 (1966). Our legislature is presumed to have adopted the prior construction and interpretation of

such statutes by the highest court of Missouri. Romero v. Tilton, 78 N.M. 696, 437 P.2d 157 (Ct.App.1967).

In 1873 and 1879, the Supreme Court of Missouri held that in wrongful death cases, including the death of a child, funeral expense was one of the most obvious and *necessary* injuries resulting from death. Owen v. Brockschmidt, 54 Mo. 285 (1873); Rains v. St. Louis, Iron Mountain and Southern Railway Co., 71 Mo. 164 (1879). This rule still prevails in Missouri. Hildreth v. Key, 341 S.W.2d 601 (Mo.App. 1960). This case has been cited with approval in New Mexico on other grounds, State v. Manlove, 79 N.M. 189, 441 P.2d 229 (Ct.App.1968).

Section 22–20–3, supra, provides that the jury, in giving damages for death, may take "into consideration the *pecuniary* injury or injuries." [Emphasis added.] The word "necessary" used in *Owen,* supra, and "pecuniary" as used in the above statute are synonymous. McGowan v. The St. Louis Ore and Steel Co., 109 Mo. 518, 19 S.W. 199 at 205 (1891). See Stang v. Hertz Corporation, 81 N.M. 69, 463 P.2d 45 (Ct.App.1969), aff. 81 N.M. 348, 467 P. 2d 14 (1970).

The plaintiffs are entitled to recover funeral and burial expenses under the New Mexico Wrongful Death Statute.

C. *The Majority Opinion Fails to Determine Errors Claimed by Defendant which may Arise on a New Trial.*

(1) *The Defendant Owed Decedents the Duty of Ordinary Care and Breached that Duty.*

Defendant claimed there was no evidence of breach of any duty owing by defendant to the decedents, that "the crux of this lawsuit and the granting of judgment n. o. v." was the error of the trial court in giving instructions Nos. 14 and 15. Instructions Nos. 14 and 15 were not erroneous.

No authority has been cited which discussed breach of duty where the municipality has control and possession of a dedicat-

ed way. However, a municipality is liable for negligence in the operation and maintenance of its sewer system. Pfleiderer v. City of Albuquerque, 75 N.M. 154, 402 P. 2d 44 (1965); White v. City of Lovington, 78 N.M. 628, 435 P.2d 1010 (Ct.App.1967).

I see no difference in theory of liability between the duty to exercise ordinary care in the operation and maintenance of a sewer system and the operation and maintenance of a dedicated way which a municipality uses as a drainage system for erosion and flood waters. The municipality has control over both systems for the benefit of the health and safety of the members of the public. This theory is reinforced by the fact that the Supreme Court applied the same theory of municipal liability for negligence in the maintenance of *parks* that existed for negligence in the maintenance of *streets*. Murphy v. City of Carlsbad, 66 N.M. 376, 348 P.2d 492 (1960).

The defendant had a duty to exercise ordinary care in the maintenance and operation of the dedicated way over which it had control and possession. The record shows substantial evidence that there was a breach of that duty.

(2) *Instruction No. 15 was not Erroneous.*

Instruction No. 14 was discussed supra. Instruction No. 15 reads as follows:

Another of the claims of the plaintiffs is that the defendant allowed *the ditch and its embankments* to remain in a dangerous condition which was an attractive nuisance to children. In order to recover under this claim each plaintiff has the burden of proving each of the following propositions:

First. That the place of the *ditch embankment condition* complained of was one upon which the defendant knew or should have known that children were likely to *venture*.

Second. The condition of the ditch embankment was one which involved an unreasonable risk of injury to children *venturing* into the ditch, and the defend-

ant knew or should have known of such risk.

Third. That the children who were killed, because of their youth, did not discover or realize the risk involved in intermeddling or coming within the area made dangerous.

Fourth. That the expense or inconvenience to the defendant in remedying the condition of the ditch embankment or guarding against the danger would have been slight in comparison to the risk of harm to the children.

Fifth. That *the condition of the ditch embankment* was a proximate cause of the deaths.

You cannot find for the plaintiffs on this claim of attractive nuisance unless you find that all of these propositions have been proved. If you find that all of these propositions have been proved, your verdict should be for the plaintiffs.

[Emphasis added.]

The defendant objected to his instruction "for the reason that the evidence does not support and there are no facts or evidence which justify or require the submission of the issue of attractive nuisance."

The evidence was sufficient to support the instruction. However, on retrial other objections may be raised.

The above instruction is the same as U. J.I. 10.4, entitled "Trespassing Children," *except* (a) that where the word "trespass" is used in U.J.I. 10.4, this instruction used the word "venture." The subject of trespass was not mentioned in the record. (b) U.J.I. 10.4 has a blank space which calls for the insertion of "the structure or other artificial condition in question." The above instruction inserted "ditch embankment condition."

Defendant raised these matters for the first time in its answer brief. The substitution of words was not error because no objection was made that the instruction was a modified or deviated variation. This objection is necessary to alert the trial court to these matters. Tapia v. Pan-

handle Steel Erectors Company, 78 N.M. 86, 428 P.2d 625 (1967). An objection will probably be made on retrial.

#### (a) *Children as Venturers*

It has not been determined in this case whether decedents were invitees, licensees, or trespassers. They were called "venturers." A trend has begun toward abolishing the arbitrary classification of "invitee," "licensee" and "trespasser" in assessing the liability of an occupier of land. Rowland v. Christian, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968); Kenny v. Grice, 171 Colo. 185, 465 P.2d 401 (1970); Annot. 35 A.L.R.3d 230 (1971), Summary and Comment. This rule should be adopted in New Mexico, at least as far as children are concerned, and the Supreme Court should give serious consideration to this rule for future application.

In Snyder v. Clune, 15 Utah 2d 254, 390 P.2d 915 (1964), the court said:

When the reason for the rule is gone, the rule should vanish with it. Appropos is the statement of Justice Holmes:

"It is revolting to have no better reason for a rule than that it was so laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past."

For similar reasons, the Supreme Court abolished the doctrine of assumption of risk. Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1971). See also Stang v. Hertz Corporation, supra.

If not now, when?

#### (b) *Ditch Embankment Condition*

Our courts of review have not determined whether the doctrine of attractive nuisance is sufficiently broad to include the ditch embankment *condition*. Is it an "artificial condition"? The instruction was submitted to the jury without specific objection to this insertion and it became the law of this case. The Supreme Court has never placed the doctrine of attractive nuisance in a rigid category on the basis of the type of *condition* involved. Its application depends on the facts of the particular case. Martinez v. Louis Lyster, General Contractor, Inc., 75 N.M. 639, 409 P.2d 493 (1965). I believe the doctrine applies to the "ditch embankment condition."

The only question argued is: Does the doctrine of attractive nuisance apply to a cave-in on the ditch embankment? Of course it does.

It is unnecessary to restate the elements of the doctrine of attractive nuisance. They will be found in Latimer v. City of Clovis, 83 N.M. 610, 495 P.2d 788 (Ct. App.1972); Saul v. Roman Catholic Church of Arch. of Santa Fe, 75 N.M. 160, 402 P.2d 48 (1965); Klaus v. Eden, 70 N.M. 371, 374 P.2d 129 (1962); Martinez v. C. R. Davis Contracting Co., 73 N.M. 474, 389 P.2d 597 (1964).

#### (3) *The Decedents were Not Guilty of Contributory Negligence and Assumption of Risk as a Matter of Law.*

Defendant claims the decedents were contributorily negligent and assumed the risk as a matter of law. The trial court instructed the jury on these legal issues.

The defense of assumption of risk was abolished in Williamson v. Smith, supra. This conclusion was prospective from that date. Taos Ski Valley v. Elliot, 83 N.M. 763, 497 P.2d 974 (1972). The present case was tried September 22 to 24, 1971, and the defense of assumption of risk was then available to defendant. Nevertheless, plaintiffs and defendant agreed that contributory negligence and assumption of risk were one and the same, and did not argue the defense of assumption of risk.

An old adage, supported by respectable authority, applies here:

Where there are no eyewitnesses, the love of life speaks as a silent witness against the assumption of risk, against contributory negligence, against suicide.

Lindgren v. Voge, 260 Minn. 262, 109 N.W.2d 754 (1961); Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P.

538 (1921); Silurian Oil Co. v. Morrell, 71 Okla. 250, 176 P. 964 (1918).

The burden of establishing affirmative defenses, as a matter of law, in a wrongful death action rests on the defendant. Martinez v. C. R. Davis Contracting Co., supra.

Defendant contends that all decedents were of sufficient age and mental capacity to look after themselves and to recognize and appreciate places of danger, and were contributorily negligent under the evidence as a matter of law. I disagree.

The evidence relied on by defendant does not, by itself, establish contributory negligence as a matter of law. The correct test by which the conduct of a child is to be measured in determining contributory negligence is set forth in Martinez v. C. R. Davis Contracting Co., supra. It points out that Mellas v. Lowdermilk, 58 N.M. 363, 271 P.2d 399 (1954), relied on by defendant, is no longer controlling on the issue of due care of a minor. See also Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706 (1939); McMullen v. Ursuline Order of Sisters, 56 N.M. 570, 246 P.2d 1052 (1952); Saul v. Roman Catholic Church of Arch. of Santa Fe, supra.

Trial and appellate courts should not judge the conduct of young children to be contributorily negligent as a matter of law, or, in this case, to have assumed the risk as a matter of law. We are not experts in behavioral conduct of children of seven to twelve years of age. The jury is the finder of the fact. The issue of contributory negligence and assumption of risk were properly submitted to the jury, because the decedents were not guilty of either as a matter of law.

(4) *Decedents' Parents were not Guilty of Contributory Negligence as a Matter of Law.*

Defendant claims that the parents of the decedents were chargeable, as a matter of law, with contributory negligence.

Under the wrongful death statute, § 22-20-3, supra, the contributory negligence of a person who will ultimately receive the benefit of a recovery bars the right of recovery to the extent of his share in the recovery. Baca v. Baca, 71 N.M. 468, 379 P.2d 765 (1963); Sanchez v. J. Barron Rice, Inc., 77 N.M. 717, 427 P.2d 240 (1967); Bolen v. Rio Rancho Estates, Inc., 81 N.M. 307, 466 P.2d 873 (Ct.App.1970).

The parents who resided in proximity to Pinos Altos arroyo, knew its location and character. Their residences were within two blocks of the cave-in site. Monje, Sr., was a lifelong resident of the area, an experienced underground miner, and well acquainted with cave-in dangers. He was familiar with the arroyo and had cautioned his three boys not to play therein. The parents were at home on Thanksgiving Day when the accident occurred, but none of them undertook to supervise or check on the whereabouts and activities of their respective children until late in the afternoon.

The uncontradicted evidence of the parents also shows they did not know of the existence of the cave in the bank of the arroyo.

Defendant contends the parents were contributorily negligent in failing to supervise their respective children and in having them unattended and unaccounted for. No authority is cited to support this contention. It does not merit our consideration. We should adopt the rule stated in City of Bremerton v. Kitsap County Sewer District, 71 Wash.2d 689, 430 P.2d 956 (1967);

Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none. Courts ordinarily will not give consideration to such errors unless it is apparent without further research that the assignments of error presented are well taken.

For the reasons stated in *Bolen,* supra, the parents were not guilty of contributory

**290**

negligence as a matter of law because there is nothing to indicate that the parents "in any way, condoned, acquiesced or consented to their sons entering the cave. There is no evidence to infer contributory negligence on the part of the parents in connection with 'the suffocation of their sons'."

D. *The Trial Court Failed to Follow Rules on Instructions.*

Section 21–1–1(51)(b), N.M.S.A. 1953 (Repl. Vol. 4) provides in part:

> After a jury has been sworn to try a case, but before opening statements or the presentation of any testimony the court *must* read the applicable portions of U.J.I. 1.2 to the jury. [Emphasis added.]

U.J.I. 1.2 contains ten "admonitions to the jury on conduct."

This rule does not fall within the duty of parties to request the reading of any portions of U.J.I. 1.2. It is mandatory on the trial court. If the court does not do so, it should explain why the applicable portions were not read. Section 21–1–1(51)(c). See Clinard v. Southern Pacific Company, 82 N.M. 55, 475 P.2d 321 (1970); Jewell v. Seidenberg, 82 N.M. 120, 477 P.2d 296 (1970); Chapin v. Rogers, 80 N.M. 684, 459 P.2d 846 (Ct.App.1969).

This is not the occasion to write an essay on the subject because this matter was not raised on appeal. But, as Chief Justice Compton wrote in his dissent in *Jewell,* supra:

> Chipping away of U.J.I. has now begun and will be camping at the door of the trial courts by what is being done.

If this case is retried, the trial court should, after the jury has been sworn, slowly and carefully read the applicable portions of U.J.I. 1.2, and it may hand to the jurors a copy thereof.

The trial court also modified U.J.I. 10.4 as mentioned supra. Whenever this is done, it would be helpful on appeal if an explanation were given.